# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Civil Case No. _____ |
| Plaintiff, | ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF, RESTITUTION, CIVIL MONETARY PENALTIES, AND OTHER EQUITABLE RELIEF UNDER THE COMMODITY EXCHANGE ACT** |
| v. | ) ) ) | |
| CENTURION CAPITAL MANAGEMENT, INC. AND TERRY MICHAEL SVEJDA, | ) ) ) ) | |
| Defendants. | ) ) ) ) ) | |
| | ) | |

Plaintiff, Commodity Futures Trading Commission ("Commission" or "CFTC"), by and through its attorneys, alleges as follows:

## I.     SUMMARY

1.      Beginning in approximately 2012, and continuing through the present (the "Relevant Period"), Centurion Capital Management, Inc. ("Centurion"), by and through its principal, Terry Michael Svejda ("Svejda"), and Svejda directly, (collectively, "Defendants"), fraudulently solicited and received at least $790,050 from at least 27 individuals ("pool participants") to invest in a commodity pool, Decadian, LLC ("Decadian"). Throughout the Relevant Period, Svejda told pool participants that he would use pool funds to trade exchange-traded commodity

futures contracts; instead, Defendants misappropriated approximately 80 percent of pool participant funds.

2.     By this conduct, and the conduct further described herein, Defendants engaged, are engaging in, and/or are about to engage in acts and practices in violation of Sections 4b(a)(1)(A) and (C), and 4*o*(1)(A) and (B), of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 6b(a)(1)(A), (C) and 6*o*(1)(A), (B) (2018).

3.     In connection with its solicitations on behalf of the Decadian commodity pool, and its operation of the pool, Centurion was required to register with the Commission as a Commodity Pool Operator ("CPO"), and Svejda was required to register as an Associated Person ("AP") of Centurion.  However, throughout the Relevant Period, Centurion and Svejda failed to so register, in violation of Sections 4m(1)(A) and 4k(2) of the Act, 7 U.S.C. §§ 6m(1)(A) and 6k(2) (2018).

4.     Further, Commission Regulations ("Regulations") prohibit CPOs from commingling pool participant funds with funds belonging to any other person.  Moreover, CPOs are required to provide pool participants with Disclosure Documents in a form specified by the Commission.  Throughout the Relevant Period, Centurion commingled pool participant funds, and failed to provide Disclosure Documents, in violation of Regulations 4.20(c) and  4.21(a)(1),  17 C.F.R. §§ 4.20(c) and 4.21(a)(1) (2020).

2

5.      The acts, omissions, and failures of Svejda occurred within the scope of his employment, office, or agency with Centurion; therefore, pursuant to Section 2(a)(l)(B) of the Act, 7 U.S.C. § 2(a)(l)(B) (2018), and Regulation 1.2, 17 C.F .R. § 1.2 (2020), Centurion is liable for the acts, omissions, and failures of Svejda that constitute violations of the Act and Regulations.

6.      Throughout the Relevant Period, Svejda was an officer and controlling person of Centurion.  Therefore, pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2018), Svejda is liable as a controlling person for the actions of Centurion in violation of the Act and Regulations.

7.      Unless restrained and enjoined by this Court, Defendants will likely continue to engage in the acts and practices alleged in this Complaint, or in similar illegal acts and practices, as described more fully below.

8.      Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), the CFTC brings this action to enjoin Defendants' unlawful acts and practices, to compel their compliance with the Act and Regulations, and to enjoin them from engaging in any commodity-related activities.  In addition, the Commission seeks civil monetary penalties, restitution, and remedial ancillary relief, including, but not limited to, trading and registration bans, disgorgement of benefits derived from Defendants' illegal activities, fees and costs, pre-judgment

and post-judgment interest, and such other equitable relief as the Court may deem necessary and appropriate.

## II.    JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2018) (codifying federal question jurisdiction) and 28 U.S.C. § 1345 (2018) (providing that United States district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress).  In addition, Section 6c(a) of the Act, 7 U.S.C. § 13a-1(a) (2018), authorizes the CFTC to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in an act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder.

10.     Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) because Defendants reside in this District, transact business in this District, and certain acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District, among other places.

## III.    PARTIES

11.     Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1-26 (2018), and the

4

Regulations promulgated thereunder, 17 C.F.R. §§1.1-190.10 (2020).  The CFTC maintains its principal office at Three Lafayette Centre, 1155 21st Street N.W., Washington, DC  20581.

12.     Defendant **Centurion Capital Management, Inc.** is a corporation organized under the laws of Nebraska, with its principal place of business in Omaha, Nebraska.  During the Relevant Period, Centurion acted as the sole Manager and Member of the Decadian commodity pool.  Centurion has never been registered with the Commission in any capacity.

13.     Defendant **Terry Michael Svejda** currently resides in Blair, Nebraska. Svejda is Centurion's president, secretary, treasurer, and sole director.  From 1993 to 1996, Svejda was registered with the Commission as a Commodity Trading Advisor, and from December 17, 2018 through the present, Svejda has been registered with the Commission as a CPO in his personal capacity.  Svejda has never been registered as an AP of Centurion or in any other capacity.

## IV.     FACTS

### A.     Defendants' Fraudulent Scheme

14.     During and prior to the Relevant Period, Svejda operated a commodity advisory subscription service.  As part of this service, Svejda distributed newsletters to subscribers that provided advice on agricultural commodities.  Many of these subscribers were farmers.

5

15.    In 2012, Svejda formed Centurion and Decadian, for the purpose of marketing a new commodity pool.  Several years later, beginning in approximately August 2015, Svejda, on behalf of Centurion, began marketing Decadian as a commodity pool.  During telephone conversations and emails with potential pool participants, some of whom were already subscribers to his newsletter, Svejda stated that the pooled funds would be traded in agricultural commodity futures contracts on a recognized commodity exchange, such as the Chicago Mercantile Exchange.

16.    Throughout the Relevant Period, Svejda personally solicited all pool participants on behalf of Centurion and was the only person who communicated with pool participants about pool operations.  In addition, throughout the Relevant Period, Svejda controlled all of the many bank accounts through which pool participant funds flowed, and he controlled the commodity trading accounts that received a small amount of pool funds.

17.    Decadian's Operating Agreement, which Svejda provided to Decadian pool participants, stated that Decadian would be in the business of providing commodity advisory services.  The Operating Agreement further stated that Centurion would serve as the "Manager" of Decadian, with responsibility for managing Decadian's day to day business affairs.

18.     During the Relevant Period, Defendants received at least $790,050 from at least 27 pool participants.  The pool participants submitted to Svejda, either in-person or through the United States mail, checks made payable to Decadian; Svejda then deposited the checks into a bank account held jointly in the names of Decadian and Svejda, and controlled by Svejda.

19.     During the Relevant Period, Svejda transferred approximately $784,650 in pool participant funds to a number of different bank accounts, including personal bank accounts held in Svejda's name and other business accounts for entities controlled by Svejda, as well as a personal futures trading account in Svejda's name.

20.     Defendants returned only approximately $5,400 of pool participant funds to pool participants.

21.     Svejda used the $784,650 in misappropriated funds to trade futures in his personal trading account, and to pay personal expenses and Centurion's corporate expenses, including, among other things, payments to a website developer, and payments to a social media and online reputation management company.  Decadian's Operating Agreement did not permit Svejda to use pool participant funds for such purposes.

22.     Throughout the Relevant Period, Centurion failed to register as a CPO, and Svejda failed to register as an AP of Centurion.  Defendants were not eligible for an exemption from the requirements to register.

23.     Throughout the Relevant Period, Centurion failed to provide Disclosure Documents to pool participants containing information concerning, among other things, the pool's investments and returns.

24.     Throughout the Relevant Period, Centurion allowed Svejda to commingle pool participant funds with funds held by Svejda and other entities he controlled.

### B.     Svejda Was a Controlling Person and an Agent of Centurion

25.     Throughout the Relevant Period, Svejda was a controlling person of Centurion.  Svejda founded and organized Centurion, and was its president, secretary, treasurer, and sole director.  Throughout the Relevant Period, Svejda personally solicited all pool participants on behalf of Centurion, and, upon information and belief, was the only person who communicated with pool participants about pool operations.  Additionally, during the Relevant Period, Svejda controlled all of the many bank accounts through which pool participant funds flowed, and the lone trading account that received a small amount of pool funds, and signed or caused to be issued all tax filings and tax documents sent to pool participants.  Throughout the Relevant Period, when he misappropriated and

failed to trade pool participant funds, Svejda acted in bad faith or knowingly

induced Centurion's fraudulent acts.

## V.   VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

### COUNT ONE

### Fraud in Connection with Commodity Futures Contracts
### Violations of Sections 4b(a)(1)(A) and (C) of the Act,
### 7 U.S.C. § 6b(a)(1)(A) and (C) (2018)

26.    The allegations contained in paragraphs 1 through 25 are realleged

and incorporated herein by reference.

27.    7 U.S.C. § 6b(a)(1)(A) and (C) make it unlawful:

> for any person, in or in connection with any order to
> make, or the making of, any contract of sale of any
> commodity in interstate commerce or for future delivery
> that is made, or to be made, on or subject to the rules of a
> designated contract market, for or on behalf of any
> person, … to:  (A) cheat or defraud or attempt to cheat or
> defraud the other person; . . . or (C) willfully to deceive
> or attempt to deceive another person by any means
> whatsoever in regard to any order or contract or the
> disposition or execution of any order or contract, or in
> regard to any act of agency performed, with respect to an
> order or contract for.

28.    As set forth above, during the Relevant Period, Defendants violated 7

U.S.C. § 6b(a)(1)(A) and (C) by, among other things:

a.  misappropriating pool participant funds to trade futures in Svejda's personal trading account, and to pay personal expenses of Svejda and corporate expenses of Centurion; and,

b.  misrepresenting to pool participants and prospective pool participants that Defendants would invest pool participant funds in exchange-traded futures contracts, and instead using pool participant funds to pay personal expenses of Svejda and corporate expenses of Centurion.

29.    Defendants engaged in the acts and practices alleged above willfully, or with reckless disregard for the truth.

30.    Defendants committed the acts and practices described above using instrumentalities of interstate commerce, including the use of United States mail, for the transfer of funds.  Each act of misappropriation and misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A) and (C).

31.    Throughout the Relevant Period, Svejda held and exercised direct and indirect control over Centurion and either did not act in good faith or knowingly induced Centurion's violations, and is therefore liable as a controlling person of

Centurion, pursuant to 7 U.S.C. § 13c(b) (2018), for Centurion's violations of 7 U.S.C. § 6b(a)(1)(A) and (C).

32.     The foregoing acts, omissions, and failures by Svejda occurred within the course or scope of his employment or office with Centurion.  Pursuant to 7 U.S.C. § 2(a)(1)(B) (2018) and 17 C.F.R. 1.2 (2020), Centurion is liable as a principal for its agent Svejda's  violations of 7 U.S.C. § 6b(a)(1)(A) and (C).

## COUNT TWO

## COMMODITY POOL FRAUD

### Violations of Section 4*o*(l)(A) and (B) of the Act, 7 U.S.C. § 6*o*(1)(A) and (B) (2018)

33.     The allegations contained in paragraphs 1 through 32 are realleged and incorporated herein by reference.

34.     7 U.S.C. § 6*o*(1) (2018) provides that:

> It shall be unlawful for a…commodity pool operator, associated person of a commodity pool operator by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—
>
> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

35.     7 U.S.C. § 6o(1)(A) and (B) apply to all CPOs, whether registered, required to be registered, or exempted from registration.

36.     Section 1(a)(11) of the Act, 7 U.S.C. § 1(a)(11) (2018) defines a CPO, in part, as "any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds . . . for the purpose of trading in commodity interests."

37.     Regulation 1.3, 17 C.F.R. § 1.3 (2020), defines a "commodity interest" as (1) Any contract for the purchase or sale of a commodity for future delivery…."

38.     Regulation 1.3 further defines an AP of a CPO as any natural person who is associated with:

> A [CPO] as a partner, officer, employee, consultant, or agent (or any natural person occupying a similar status or performing similar functions), in any capacity which involves:  (i) the solicitation of a client's or prospective client's discretionary account, or (ii) the supervision of any person or persons so engaged[.]

39.     During the Relevant Period, Centurion acted as a CPO by engaging in a business that is of the nature of a commodity pool, and in connection therewith, soliciting, accepting, or receiving from investors, funds, securities or property,

either directly or through capital contributions, the sale of stock or other forms or securities, or otherwise, for the purpose of trading in commodity interests.

40.    During the Relevant Period, Svejda acted as an AP of a CPO when he solicited funds, securities, or property for participation in a commodity pool, and/or supervised others engaged in such conduct.

41.    During the Relevant Period, Centurion, acting as a CPO, and Svejda, acting as an AP of a CPO,  committed fraud in violation of 7 U.S.C. § 6$o$(1)(A) and (B) by, among other things:

    a.  misappropriating pool participant funds to trade futures in Svejda's personal trading account, and to pay personal expenses of Svejda and corporate expenses of Centurion; and,

    b.  misrepresenting to pool participants and prospective pool participants that Defendants would invest pool participant funds in exchange-traded futures contracts, and instead using pool participant funds to pay personal expenses of Svejda and corporate expenses of Centurion.

42.    Defendants committed the acts and practices described herein willfully, or with reckless disregard for the truth.

43.    Each act of misappropriation and misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1)(A) and (B).

44.    During the Relevant Period, Svejda held and exercised direct and indirect control over Centurion. and either did not act in good faith, or knowingly induced Centurion's violations, and is therefore liable, pursuant to 7 U.S.C. § 13c(b), for Centurion's violations of 7 U.S.C. § 6*o*(1)(A) and (B).

45.    The foregoing acts, omissions, and failures by Svejda occurred within the course or scope of his employment or office with Centurion.  Pursuant to 7 U.S.C. § 2(a)(1)(B) (2018) and 17 C.F.R. 1.2 (2019), Centurion is liable as a principal for Svejda's violations of 7 U.S.C. § 6*o*(1)(A) and (B).

## COUNT THREE

## FAILURE TO REGISTER AS A CPO

### Violation of Section 4m(1) of the Act,
### 7 U.S.C. § 6m(1) (2018)

46.    The allegations contained in paragraphs 1 through 45 are realleged and incorporated herein by reference.

47.    With certain specified exceptions and exemptions not applicable here, 7 U.S.C. § 6m(1) makes it unlawful for any CPO to make use of the mails or any

14

means or instrumentality of interstate commerce in connection with its business, unless it is registered with the Commission.

48.     Throughout the Relevant Period, Centurion acted as an unregistered CPO, and accordingly violated 7 U.S.C. § 6m(1), by using the mails and other means and instrumentalities of interstate commerce in connection with its business, without having registered with the Commission as a CPO.

49.     Svejda held and exercised direct and indirect control over Centurion and either did not act in good faith or knowingly induced Centurion's violations and is therefore liable, pursuant to 7 U.S.C. § 13c(b), for Centurion's violations of 7 U.S.C. § 6m(1).

## COUNT FOUR

## FAILURE TO REGISTER AS AN AP OF A CPO

### Violation of Section 4k(2) of the Act,
### 7 U.S.C. § 6k(2) (2018)

50.     The allegations contained in paragraphs 1 through 49 are realleged and incorporated herein by reference.

51.     With certain specified exceptions and exemptions not applicable here, 7 U.S.C. § 6k(2)(i) makes it unlawful for any person to be associated with a CPO as a "partner, officer, employee, consultant or agent (or any person occupying a similar status or performing similar functions), in any capacity that involves (i) the

solicitation of funds, securities, or property for a participation in a commodity pool, …. unless such person is registered with the Commission" as an AP of the CPO.

52.    7 U.S.C. § 6k(2) also prohibits a CPO from permitting "such a person to become or remain associated with"  it, in any such capacity, if the CPO knew or should have known that such person was not registered as an AP.

53.    During the Relevant Period, Svejda was associated with Centurion as an officer, employee, director and owner; in addition, Svejda solicited investments on behalf of Centurion in the commodity pool operated by Centurion. As such, Svejda was required to register as an AP of a CPO.  By failing to register, Svejda violated 7 U.S.C. § 6k(2)(i).

54.    During the Relevant Period, Centurion permitted Svejda to become or remain associated with Centurion.  Centurion knew that Svejda was not registered as an AP.  Accordingly, Centurion violated 7 U.S.C. § 6k(2).

55.    Throughout the Relevant Period, Svejda held and exercised direct and indirect control over Centurion and either did not act in good faith or knowingly induced Centurion's violations and is therefore liable as a controlling person of Centurion, pursuant to 7 U.S.C. § 13c(b), for Centurion's violations of 7 U.S.C. § 6k(2).

56.     The foregoing acts, omissions, and failures by Svejda, as an officer, employee, and/or agent of Centurion occurred within the course or scope of his employment or office with Centurion.  Pursuant to 7 U.S.C. § 2(a)(1)(B) and 17 C.F.R. 1.2, Centurion is liable as a principal for its agent Svejda's violations of 7 U.S.C. § 6k(2).

## COUNT FIVE

### COMMINGLING OF POOL PARTICIPANTS' FUNDS AND FAILURE TO PROVIDE DISCLOSURE DOCUMENTS

### Violations of Regulations 4.20(c) and 4.21(a)(1), 17 C.F.R. §§ 4.20(c) and 4.21(a)(1) (2020)

57.     The allegations contained in paragraphs 1 through 56 are realleged and incorporated herein by reference.

58.     17 C.F.R. § 4.20(c) prohibits a CPO from commingling the property of a commodity pool with the property of any other person.

59.     During the Relevant Period, Centurion commingled pool participant funds with funds of other persons, including funds belonging to Svejda and other entities he controlled, in violation of 17 C.F.R. § 4.20(c).

60.     17 C.F.R. § 4.21(a)(1) requires each CPO to deliver or cause to be delivered to a prospective pool participant a Disclosure Document prepared in accordance with Regulations.

61.     During the Relevant Period, Centurion failed to deliver to prospective pool participants a Disclosure Document prepared in accordance with Regulations.

62.     Each commingling of a pool participant's funds, and each failure to deliver a Disclosure Document to a prospect pool participant is alleged as a separate and distinct violation by Centurion of 17 C.F.R. § 4.20(c) and 17 C.F.R. § 4.21(a)(1), respectively.

63.     Throughout the Relevant Period, Svejda held and exercised direct and indirect control over Centurion and either did not act in good faith or knowingly induced Centurion's violations and is therefore liable as a controlling person of Centurion, pursuant to 7 U.S.C. § 13c(b), for Centurion's violations of 17 C.F.R §§ 4.20(c) and 4.21(a)(1).

## VI.     RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2018), and pursuant to the Court's inherent equitable powers, enter:

A.     an order finding that Centurion and Svejda violated Sections 4b(a)(1)(A) and (C), 4o(l)(A) and (B), 4m(1) and 4k(2) of the Act, 7 U.S.C. §§ 6b(a)(1)(A) and (C), 6o(1)(A) and (B), 6m(1) and 6k(2) (2018), and Regulations 4.20(c) and 4.21(a)(1), 17 C.F.R. §§ 4.20(c) and 4.21(a)(1) (2020);

B.      an order of permanent injunction restraining, enjoining and prohibiting Centurion and Svejda, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, who receive actual notice of such order by personal service or otherwise from engaging in conduct in violation of 7 U.S.C. §§ 6b(a)(1)(A) and (C), 6o(1)(A) and (B), 6m(1) and 6k(2), and 17 C.F.R. §§ 4.20(c) and 4.21(a)(1);

C.      an order of permanent injunction prohibiting Centurion and Svejda, and their affiliates, agents, servants, employees, successors, assigns, attorneys, and all persons in active concert with them, from directly or indirectly:

(i)     trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § la(40) (2018));

(ii)     entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2019)) for their own personal account or for any account in which they have a direct or indirect interest;

(iii)     having any commodity interests traded on their behalf;

(iv)    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

(v)     soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

(vi)    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from

registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2019); and

(vii)   acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2019)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9).

D.      an order directing Centurion and Svejda, as well as any third-party transferee and/or successors, to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, salaries, commissions, loans, fees, revenues and trading profits derived, directly or indirectly, from the acts or practices that constitute violations of the Act and Regulations as described herein, including pre-judgment interest thereon from the date of such violations, and post-judgment interest;

E.      an order requiring Centurion and Svejda, as well as any of their successors, to make full restitution to every person who sustained losses proximately caused by the violations described herein;

F.      an order directing Centurion and Svejda, as well as any successors thereof, to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether implied or express, entered into between, with or among Centurion and Svejda and any of the pool participants whose funds were received

20

by Centurion and Svejda as a result of the acts and practices that constitute

violations of the Act and Regulations, as described herein;

G.     an order directing Centurion and Svejda to pay a civil monetary

penalty assessed by the Court in an amount not to exceed the penalty prescribed by

Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1(d)(1) (2018), as adjusted for inflation

pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act

of 2015, Pub. L. 114–74, 129 Stat. 584 (2015), title VII, Section 701, and

promulgated in Regulation 143.8, 17 C.F.R. § 143.8 (2020), plus post-judgment

interest;

H.     an order requiring Centurion and Svejda, as well as any successors,  to

pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2018); and

I.     an order providing such other and further relief as this Court may

deem necessary and appropriate under the circumstances.

Respectfully Submitted,

*Glenn I. Chernigoff*

Glenn I. Chernigoff, Trial Attorney
D.C. Bar No. 488500
Aimée Latimer-Zayets, Chief Trial Attorney
D.C. Bar No. 476693

Commodity Futures Trading Commission
Division of Enforcement
Three Lafayette Centre
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5305 (Chernigoff)
Facsimile: (202) 418-5538
gchernigoff@cftc.gov

Attorneys for the Commodity Futures
Trading Commission