Moving Party:    Commodity Futures Trading Commission

*Commodity Futures Trading Commission v. Centurion Capital Management, Inc. and Terry Michael Svejda*,
Case No. 21-cv-00311-JMG-MDN

To assist the Court in more efficiently addressing the parties' discovery dispute(s), the parties shall meet and confer, and jointly complete the following chart. The purpose of this chart is to succinctly state each party's position and the last compromise offered when the parties met and conferred. The fully completed chart shall be e-mailed to chambers of the assigned magistrate judge.

The moving party is:    Plaintiff, Commodity Futures Trading Commission

The responding party is:    Defendants

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| **RFP No. 1:** "All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Centurion." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | The plain language of the Complaint, relevant CEA provisions, and case law demonstrate that communications with potential investors that relate to Centurion are relevant and proportional to Plaintiff's fraudulent solicitation claims and should be produced. | 1. Plaintiff's request for communications related to Centurion are not relevant to Plaintiff's claims, which relate to investments in Decadian—a separate business venture.<br><br>2. Requests for communications with potential investors are overbroad and not proportional. Plaintiff seeks only damages related to actual investors in Decadian. | Plaintiff clarified that this request excludes customers of Mr. Svejda's newsletter business who were not solicited as potential investors in Decadian and/or Centurion. *See* Complaint ¶ 18. | Defendants have produced all solicitations to invest in Decadian that were sent to Decadian investors, which amounts to hundreds of documents. | Defendants' objections are overruled, except to clarify that the communications must be related to Decadian between January 2015 and the present. The parties are to meet and confer to agree on appropriate search terms. |
| **RFP No. 2:** "All communications with actual and potential | Fraud in Connection with Commodity Futures Contracts | The plain language of the Complaint, relevant CEA provisions, and case law | 1. Defendants will produce all solicitations to invest | See above. | Defendants have produced all solicitations to | |

---

[1] Plaintiff sent separate requests for production of documents to Mr. Svejda and Centurion.  Although there are minor differences in wording, the requests are substantively the same.  Plaintiff used the language of the requests to Mr. Svejda in this chart.

Moving Party: <u>Commodity Futures Trading Commission</u>

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| customers, clients, investors, commodity pool participants, and/or any other third parties, related to Decadian, including all communications with the individuals listed in Exhibit A-1, Response No. 5, to Your May 14, 2020 letter to the Commission." | (**Count 1**); Commodity Pool Fraud (**Count 2**) | demonstrate that communications with potential investors that relate to Decadian are relevant and proportional to Plaintiff's fraudulent solicitation claims and should be produced. | in Decadian that were sent Decadian investors. 2. Requests for communications with potential investors are overbroad and not proportional. Plaintiff seeks only damages related to actual investors in Decadian. Hundreds of solicitations were sent to potential investors in Decadian. Solicitations were typically made via standard form emails and production of solicitations to potential investors would be largely duplicative. | | invest in Decadian that were sent to Decadian investors, which amounts to hundreds of documents. | Defendants' objections are overruled, except to clarify that the communications must be related to Decadian between January 2015 and the present. The parties are to meet and confer to agree on appropriate search terms. |
| **RFP No. 7:** "All communications between you and Mark D. Svejda, and all documents sent to or received from Mark D. Svejda, relating to Centurion and/or Decadian." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**); Failure to Register as a CPO or an Associated Person (**Counts 3 and 4**) | Decadian marketing materials, produced by Defendants and provided to Decadian investors, include representations relating to this individual's involvement in the Decadian business. Therefore, these requests are relevant and proportional to Plaintiff's fraudulent solicitation and registration claims. | The request is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional. Plaintiff's fraud claims are narrow and limited to the allegation that Defendants told investors in Decadian that their money would be used to invest in commodities, but the | If Defendants assert that responsive documents are privileged, they must produce a privilege log so that Plaintiff can evaluate the privilege claims. | Plaintiff alleges that Defendants misrepresented how investor funds would be used and Defendants have agreed to produce financials, which are sufficient to show how investor funds were used. Defendants stand on their objections | Defendants' relevance and proportionality objections are overruled. Defendants must produce a privilege log for any withheld documents. |

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| | | | money was used for other purposes. Communications with Mark Svejda have no bearing on this limited issue. Plaintiff has not alleged that Defendants fraudulently told investors that Mark Svejda was involved in the Decadian business. Further, the request is not limited in time. | | related to communications with Mark Svejda, Esq., and believe the request to be a fishing expedition. If Defendants' objections are overruled, and Defendants are ordered to produce communications, a privilege log would thereafter be produced in connection with the production. | |
| **RFP No. 8:** "All communications between you, Doug Prewitt, and/or Scott Prewitt, and all documents sent to or received from Doug and/or Scott Prewitt, relating to Centurion and/or Decadian." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | In their solicitations to Decadian investors, Defendants included representations that these individuals endorsed the Decadian business. Thus, they are relevant and proportional to Plaintiff's fraudulent solicitation claims. | The request is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional. Plaintiff's fraud claims are narrow and limited to the allegation that Defendants told investors in Decadian that their money would be used to invest in commodities, but the money was used for other purposes. Communications with Doug and Scot Prewitt have no bearing on this limited issue. Plaintiff has not alleged that | | Plaintiff alleges that Defendants misrepresented how investor funds would be used and Defendants have agreed to produce financials, which are sufficient to show how investor funds were used.<br><br>Defendants stand on their objections related to communications with Doug and Scott Prewitt and believe the request to be a fishing expedition seeking | *Defendants' relevance and proportionality objections are overruled.* |

Moving Party:   Commodity Futures Trading Commission

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| | | | Defendants fraudulently told investors that Doug and Scott Prewitt endorsed the Decadian business. | | to identify fraud that was not alleged. | |
| **RFP No. 9:** "All documents related to the website, http://automatedentities.com, referenced in CENTURION000019." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | In their solicitations to Decadian investors, Defendants included representations relating to a web site created by the individuals identified in RFP No. 8, and which purportedly includes an endorsement of the Decadian business. Thus, they are relevant and proportional to Plaintiff's fraudulent solicitation claims. | See position regarding RFP No. 8. | | See position regarding RFP No. 8. | Defendants' relevance and proportionality objections are overruled. |
| **RFP No. 10:** "All communications between you and Robert G. Slonim, and or IVEST, LLC, and all documents sent to or received from Slonim and/or IVEST, LLC, relating to Centurion and/or Decadian." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | In their solicitations to Decadian investors, Defendants included representations that this individual endorsed the Decadian business. Thus, they are relevant and proportional to Plaintiff's fraudulent solicitation claims. | The request is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional. Plaintiff's fraud claims are narrow and limited to the allegation that Defendants told investors in Decadian that their money would be used to invest in commodities, but the money was used for other purposes. Communications with Robert Slonim and | | Plaintiff alleges that Defendants misrepresented how investor funds would be used and Defendants have agreed to produce financials, which are sufficient to show how investor funds were used.  Defendants stand on their objections related to communications with Robert Slonim and IVEST, LLC | Defendants' relevance and proportionality objections are overruled. |

Moving Party:   Commodity Futures Trading Commission

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| | | | IVEST, LLC have no bearing on this limited issue. Plaintiff has not alleged that Defendants fraudulently told investors that Robert Slonim endorsed the Decadian business. | | and believe the request to be a fishing expedition seeking to identify fraud that was not alleged. | |
| **RFP No. 18:** "All documents relating to the 'Decadian Methodology' set forth on pages 1 and 2 of the Executive Summary." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | In their solicitations to Decadian investors, Defendants included representations about Defendants' investment strategy, performance guarantees, returns, and risks of Decadian. Thus, they are relevant and proportional to Plaintiff's fraudulent solicitation claims. | The request is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional. The Decadian Methodology described in pages 1 and 2 of the Executive Summary is a methodology developed by Svejda over many years, which has been deployed to hundreds of individuals for many years through, primarily, newsletters that are sent to individuals capable of directly managing their own investments and without regard to the specifics of those individual's assets or investment objectives. Locating and producing all | | Plaintiff alleges that Defendants misrepresented how investor funds would be used and Defendants have agreed to produce financials, which are sufficient to show how investor funds were used.<br><br>Documents produced by Defendants, including the Executive Summary identified in the request, describe the Decadian Methodology in detail. | Defendants' relevance and proportionality objections are overruled. |

Moving Party: ___Commodity Futures Trading Commission___

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| | | | documents regarding the Decadian Methodology would be an incalculable task.  Further, Plaintiff's fraud claims are narrow and limited and no allegations have been made that Defendants made false statements regarding investment strategy, performance guarantees, returns, or risks. | | | |
| **RFP No. 19:** "All documents that support each claim made in the Executive Summary." | Fraud in Connection with Commodity Futures Contracts (**Count 1**); Commodity Pool Fraud (**Count 2**) | In their solicitations to Decadian investors, Defendants included representations about Defendants' investment strategy, performance guarantees, returns, and risks of Decadian.  Thus, they are relevant and proportional to Plaintiff's fraudulent solicitation claims. | The request is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional. Plaintiff's fraud claims are narrow and limited to the allegation that Defendants told investors in Decadian that their money would be used to invest in commodities, but the money was used for other purposes.  By requesting all documents that support each claim made in the Executive Summary, which was part of the | | Plaintiff alleges that Defendants misrepresented how investor funds would be used and Defendants have agreed to produce financials, which are sufficient to show how investor funds were used.  Defendants stand on their objections to a request that requires them to produce the factual support for each and every claim and statement found in the | Defendants' relevance and proportionality objections are overruled. |

Moving Party:   Commodity Futures Trading Commission

| Discovery Request at Issue[1] | Relevant to prove... | Moving Party's Initial Position | Responding Party's Initial Position | Moving Party's Last Offered Compromise | Responding Party's Last Offered Compromise | Court's Ruling |
|---|---|---|---|---|---|---|
| | | | solicitation made to investors, Plaintiff is engaging in a clear fishing expedition that well exceeds the limited scope of its fraud claims. | | solicitations to investors. | |

**s/ Michael D. Nelson**
**March 10, 2022**

Counsel for Plaintiff:   /s/ Glenn Chernigoff

Counsel for Defendants:   /s/ Adam W. Barney

Date:  March 8, 2022.

# CLINE WILLIAMS
## WRIGHT JOHNSON & OLDFATHER, L.L.P.
### ATTORNEYS AT LAW
ESTABLISHED 1857

ADAM W. BARNEY
abarney@clinewilliams.com

STERLING RIDGE
12910 PIERCE STREET, SUITE 200
OMAHA, NEBRASKA 68144-1105
www.clinewilliams.com

(402) 397-1700
FAX (402) 397-1806

March 8, 2022

Magistrate Judge Michael D. Nelson
nelson@ned.uscourts.gov

Re:     Commodities Futures Trading Commission v. Svejda, Case No. 21-cv-311

Magistrate Judge Nelson:

In this civil enforcement action, the Commodities Futures Trading Commission ("CFTC") alleges that Defendants defrauded individuals by stating that investments in Defendants' venture would be used to invest in commodities futures contracts, but that the investment funds were not so used. See Filing No. 24, at pp. 2-3.[1] This is the only allegation of fraudulent conduct in the Complaint. The CFTC also makes additional claims against Defendants for failure to register. However, as the discovery chart reveals, the parties agree that those claims are largely irrelevant to this discovery dispute.

The CFTC conducted a formal investigation of the underlying facts prior to bringing this enforcement action, but, to the best of Defendants' knowledge, the CFTC never requested any of the solicitations Defendants sent to investors. This oversight apparently led the CFTC to conclude that certain statements were made to investors when, in fact, written disclosures to investors stated the exact opposite. After the CFTC filed its Complaint and Defendants noted the faulty premise upon which it was brought, Defendants produced copies of investor solicitations to the CFTC, in an effort to clear up the readily apparent confusion. The solicitations sent to investors specifically stated the use of investor funds was marketing, advertising, legal, and staffing. See Exhibit A, at CENTURION 000271.

Despite now knowing that Defendants explicitly told investors that their funds would be used for purposes other than operating a commodities pool, the CFTC has persisted in its misguided claims. In discovery, the CFTC has requested documents and information well outside the allegations in the Complaint, seeking the factual basis for every factual claim made in solicitations to investors. After Defendants objected to the CFTC's discovery, the CFTC sought court intervention.

---

[1] The precise allegations are that Svejda "misrepresent[ed] to pool participants and prospective pool participants that Defendants would invest pool participant funds in exchange-traded futures contracts, and instead us[ed] pool participant funds to pay personal expenses of Svejda and corporate expenses of Centurion." Complaint ¶¶ 28(b), 41(b). See also ¶ 1 ("Svejda told pool participants that he would use pool funds to trade exchange-traded commodity futures contracts; [but] instead Defendants misappropriated approximately 80 percent of pool participant funds."); ¶ 15 ("During telephone conversations and emails with potential pool participants . . . Svejda stated that the pooled funds would be traded in agricultural commodity futures contracts on a recognized commodity exchange . . . .").

233 SOUTH 13TH STREET
1900 U.S. BANK BLDG.
LINCOLN, NE 68508-2095
(402) 474-6900

1207 M STREET
P.O. BOX 510
AURORA, NE 68818
(402) 694-6314

215 MATHEWS STREET
SUITE 300
FORT COLLINS, CO 80524
(970) 221-2637

131 W. EMERSON STREET
HOLYOKE, CO 80734
(970) 854-2264

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). "Though broad, the rule still requires '[s]ome threshold showing of relevance [to] be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case.'" Superior Services, Inc. v. Universal Warranty Corp., 2018 WL 2694466, at *1 (D. Neb. June 6, 2018) (citation omitted). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." Brown v. W. Corp., 2013 WL 4456556, at *6 (D. Neb. Aug. 16, 2013).

The relevant underlying claims by the CFTC sound in fraud. Of course, claims for fraud must be pled with particularity. See Fed. R. Civ. P. 9(b). The particularity requirement serves important purposes. Most salient to this dispute, the particularity requirement "deters the use of complaints as a pretext for fishing expeditions of unknown wrongs designed to compel *in terrorem* settlements." Strong v. Caliber Home Loans, Inc., 8:17-CV-485-JMG-CRZ, 2018 WL 3321438, at *1 (D. Neb. July 5, 2018) (quoting Streambend Properties II, LLC v. Ivy Tower Minneapolis, LLC, 781 F.3d 1003, 1010 (8th Cir. 2015)).

Rule 9(b) was specifically designed to protect against the type of expansive requests served by the CFTC. As it must, the Complaint frames the issues regarding fraud with particularity and is limited to the following: What did Defendants tell investors about how their funds would be used, and how did Defendants actually use investor funds. The CFTC's requests for discovery into the factual basis for every statement made to any actual or potential investor have no bearing on the particular fraud at issue. Similarly, the CFTC's requests for all communications with individuals identified in the Executive Summary are unrelated to the limited scope of the alleged fraud. The CFTC's discovery tactics are improper, beyond the scope of Rules 9 and 26, and can be seen as nothing more than a fishing expedition.

The other primary dispute between the parties relates to production of communications with potential investors in Decadian. Defendants have produced copies of all solicitations sent to actual investors in Decadian. The CFTC insists that Defendants must also produce copies of all communications with any potential investor in Decadian. To the extent the CFTC's request for communications with potential investors seeks relevant documents at all,[2] the request is not proportional to the needs of the case. Defendants' document production has revealed that Defendants sent the same or very similar solicitations to each investor. The requested documents would be largely duplicative of the document production to date and, thus, not proportional to the needs of the case. Cf. Fed. R. Civ. P. 26(b)(2)(C)(i). The CFTC has not and cannot identify any need or importance of communications with potential investors.

Defendants respectfully request that their objections to the discovery propounded by the CFTC be sustained.

Respectfully submitted,

/s/ Adam W. Barney

Adam W. Barney
For the Firm

---

[2] The CFTC only seeks damages with respect to the 27 actual investors, not potential investors.



# Decadian
## Executive Summary

**Decadian: The Currency of Trust**

**Putting the Investor First:**

All are familiar with the "normal" areas of investments; stocks, bonds, 401k's, IRA's, commodities, derivatives, etc. The majority of investors participate in these investments through institutional channels. The institution earns its profits through its fees, the broker earns their profit through their fees, and if there is anything left over, the investor gets a credit to his account. If you were to visit with any "average Joe", you'll find most are quite dissatisfied with the results achieved through their investment efforts. They see the transfer of wealth. It's not to them, but from them, to those who are "here to help". Decadian puts the investor first! Let us explain how.

**Decadian Methodology**

The Decadian Methodology offers investors up to four (4) or more long term investment recommendations per year on seasonal lows, long term lows or historic lows in high leveraged investments (HLI)/commodities.

Decadian's ability to achieve above market rates of return stems from the use of a simple strategy that few ever contemplate to apply to HLI. Most all of Decadian's investment recommendations will be tendered when that commodity is priced at or near its seasonal low, a long term low, a historical low, or possibly when Funds hold a record short position in that commodity. This approach is just one of the ways Decadian manages risk, as the least risk in a HLI is when price is within the lower ten percent (10%) of its seasonal trading range; which is also when volatility is at its lowest. *(The greatest risk is when price is within the top ten percent (10%) of its seasonal trading range; which is also when volatility is at its greatest.)*

In depth knowledge of a commodity's seasonal price movement is part of Decadian's Methodology of locking in high returns, as well as managing risk. Food commodities generally rally thirty percent (30%) per year, low to high. HLI offer a leverage factor of 15:1; some more, some less. Taking just one third (1/3) of that commodity's seasonal gain off the table, or a ten percent (10%) increase in that commodities value - times a leverage factor of fifteen (15) - generates a ROI of one hundred fifty percent (150%).

Using just 10% of the total dollars in a Decadian Fund for any one investment while achieving these results, earns that Decadian Fund a 15% return on all the dollars held in that fund. Using just ten percent (10%) of Decadian's available capital per each investment recommendation would allow Decadian the ability to hold 3 investments in one or more commodities at any one time. Three (3) successful investments per year where Decadian would take profits immediately after the asset purchased increased in value just ten (10%), would generate a forty five percent (45%) annualized return on all dollars held in that Decadian Fund.

**1**

CENTURION 000268
CONFIDENTIAL

EXHIBIT A



info@decadian.com
888-553-5540

Sound money management is the number one (#1) key to success in mitigating any risks involved with HLI. Sufficient capital must be maintained to support any margin needs should an investment move against you. Decadian manages this potential risk by never investing more than thirty percent (30%) of its available capital at any one time; always maintaining a base capital reserve of seventy percent (70%).

Decadian's long term investment methodology moves investors away from the institutionally driven "trading" concept that focuses on generating fees for themselves and their brokers. **This truth** is directly addressed in one of Mr. Buffett's favorite books by John Bogle, who wrote this zinger: ***"Most advisors, however, are far better at generating high fees than they are at generating high returns. In truth, their core competence is salesmanship."***

The paradigm offered with the Decadian Methodology places the investor's interests of high returns and high profits ahead of any management fees. Because our core competency is in high leveraged investments (HLI), Decadian also offers two (2) performance guarantees on its investment recommendations, something that no other firms would even consider offering.

**Enter Decadian; Offering the Individual Investor:**

- Memberships (for those capable of directly managing their investments)
    - Decadian Wealth Report
    - Access to Decadian educational information
    - Investment Recommendations
    - Members receive up to 4 or more investment recommendations per year via text and backed up by email notices
    - They are advised as to what to buy, when to buy, how to manage the investment and when to take profit
    - Guarantees on Decadian Performance
        - **Guarantee Number 1** suspends their annual membership renewal fee until such time as the Member can generate a profit that exceeds the first year's membership fee of $4950.00
        - **Guarantee Number 2** states that the Member shall receive at least one investment recommendation during his first two years of membership that will generate a return equal to or greater than the initial cost of that investment; a 100% return

**2**

CENTURION 000269
CONFIDENTIAL



## Decadian Income Streams:

- Line # 1:
  - o Memberships:
    - § $4,950.00 per year subscription fee
    - § Anticipated Revenue from Subscription Fees projected to be 70% of total
      - • Don Prewitt, from Orlando, Florida, asked his son Scott, owner of Automated Entities, reviewed Decadian.
        http://automatedentities.com/
      - • Mr. Prewitt calculated that by spending $10,000 per month on advertising
        - o In a span of 5 years a Membership base of over 10,000 could be achieved
        - o Annual revenue stream of over $50,000,000.00

  *Footnote: Scottrade, E-trade & Ameritrade have approximately 300,000 members*

- Line #2:
  - o $100m Investment Fund
    - § $100m Investment Fund to begin operating under 10/10/50/50 by July 01, 2016
    - § Income generated from this Investment Fund details in 5 year income projections

- Line #3:
  - o $100m Investment Fund Built Out From Success of First Fund
    - § Commensurate initiating said Investment Fund, Mark Svejda, Attorney at Law in Scottsdale, AZ., will be securing his CTA (Commodity Trading Advisor) and a CPO (Commodity Pool Operator) licensing, for the purpose of initiating a second Investment Fund
    - § Decadian will work to grow this new LLC to a minimum of $100,000,000.00 no later than 2018
    - § Decadian projects a minimum annual return to Decadian from this income stream of $10,000,000.00.   Income generated from this Investment Fund details in 5 year income projections

\* To establish Decadian's credibility to institutional investors per the ability to generate a minimum return of 10%.   (Past results not applicable to institutional verification needs.)
**Footnote:** See attached letter from Mr. Robert Slonim.

<u>3</u>

CENTURION 000270
CONFIDENTIAL



info@decadian.com
888-553-5540

**What is offered and What is Requested:**

Current Valuation of Decadian and Anticipated Return on Investment (ROI):

- $10,000,000.00 Valuation
- Projected Annual Revenue in year five (5) exceeds $70,000,000.00
- Anticipated first ROI received by the end of year two (2)
- Up to 100% ROI earned by the end of year three (3)
- Exceeding 200%, potential up to 500% ROI earned by the end of year five (5)

Decadian Investment Opportunity:
- Offering 20% ownership in company
- $2,000,000.00 capital raise
- Price per share - $5000.00.
- Minimum purchase is 2 shares/$10,000.00
- Minimum purchase to acquire free Executive Level Membership in Decadian - 5 shares.
- Each stockholder retaining a minimum of 5 shares secures an Executive Level Membership in Decadian that holds an annual reoccurring value of $4950.00.

Uses of Funds:
- Building Membership Base via Multiple Marketing and Advertising Venues
- Legal
- Staffing

This Summary is for informational purposes only and does not constitute an offer or solicitation to sell shares or securities in Decadian or any related or associated company. Any such offer or solicitation will be made only by means of Decadian's confidential Offering Memorandum and in accordance with the terms of all applicable securities and other laws. None of the information or analyses presented is intended to form the basis for any investment decision, and no specific recommendations are intended. Accordingly, this Summary does not constitute investment advice or counsel or solicitation or investment in any security. This Summary does not constitute or form part of, and should not be construed as, any offer for sale or subscription of, or any invitation to offer to buy or subscribe for, any securities, nor should it or any part of it form the basis of, or be relied on in any connection with, any contract or commitment whatsoever. Decadian expressly disclaims any and all responsibility for any direct or consequential loss or damage of any kind whatsoever arising directly or indirectly from: reliance on any information contained in the Summary, (ii) any error, omission or inaccuracy in any such information or (iii) any action resulting therefrom.

**4**

CENTURION 000271
CONFIDENTIAL

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

COMMODITY FUTURES TRADING
COMMISSION,

               Plaintiff,

v.

CENTURION CAPITAL MANAGEMENT,
INC. AND TERRY MICHAEL SVEJDA,

Defendants.

**Case No.
8:21-cv-00311-JMG-MDN**

## PLAINTIFF'S SUMMARY OF PARTIES' DISCOVERY DISPUTE

Plaintiff Commodity Futures Trading Commission ("CFTC") hereby submits this summary of the parties' discovery dispute, which is based upon Defendants' refusal to produce documents responsive to the CFTC's Document Requests.

The Complaint alleges that Defendants fraudulently solicited funds from investors to invest in Decadian LLC ("Decadian"), a commodity pool. Compl. [ECF No. 1] ¶¶ 15-17. Defendants made multiple misrepresentations in communications with actual and potential investors. During the Relevant Period, Defendants received at least $790,050 from at least 27 investors. *Id.* ¶ 18. Defendants misappropriated most of the Decadian investor funds, and returned just $5,400 to the investors. *Id.* ¶ 20. Such conduct violates, *inter alia*, Sections 4b and 4*o* of the Commodity Exchange Act ("CEA"), 7 U.S.C. §§ 6b and 6*o* (2018). *Id.* ¶¶ 26-45.

1. **Defendants' Communications with Potential Investors**

Document Request Nos. 1 and 2 seek Defendants' communications with actual and potential investors of Centurion and Decadian. Defendants object to the production of communications with potential investors, even though such communications are expressly alleged in the Complaint. *Id.* ¶¶ 15, 28(b), 41(b). Moreover, Sections 4b and 4*o* of the CEA explicitly provide causes of action for fraudulent solicitations to potential investors. 7 U.S.C. §§ 6b(a)(1)(A), (C); 6*o*(1)(A), (B). Accordingly, communications with potential investors are relevant to the fraud claims.[1]

2. **Representations to Investors in Decadian Marketing Materials**

Document Request Nos. 7-10, 18, and 19 seek documents relating to representations made in Decadian marketing materials, which Defendants produced during discovery.

---

[1] *See also, e.g.*, *CFTC v. Arrington*, 998 F. Supp. 2d 847, 869 (D. Neb. 2014) (holding defendant "committed fraud in violation of the CEA by making direct and indirect misrepresentations to potential and existing investors"), *aff'd sub nom. CFTC v. Kratville*, 796 F.3d 873 (8th Cir. 2015); *CFTC v. First Capitol Futures Grp.*, No. CIVA10900488CVWDW, 2010 WL 1713617, at *13 (W.D. Mo. Feb. 18, 2010) (imposing civil monetary penalties based on defendants' "fraudulent representations to each of the investors and potential investors").

Defendants acknowledge that they distributed these materials to the 27 Decadian investors identified in the Complaint, but argue that because CFTC did not specifically include these representations in the Complaint, documents relating to the representations are not discoverable. This argument is incorrect. *First*, these representations relate to the Decadian business, and a key factual issue concerns the representations made to investors about the type of business Decadian operated. *See* Compl. ¶ 17. *Second,* the Complaint's fraud counts encompass all misrepresentations made to the 27 Decadian investors, and potential investors. *See, e.g.*, *id.* ¶¶ 28, 41 (alleging that Defendants violated Sections 4b and 4*o* "by, among other things . . . misrepresenting . . . that Defendants would invest pool participant funds in exchange-traded futures contracts"); *id.* ¶¶ 30, 43 ("[e]ach . . . misrepresentation or omission of material fact, including but not limited to those specifically alleged herein," violated Sections 4b and 4*o*).

Moreover, Defendants' argument contradicts the Eighth Circuit's view of discoverable material. Parties do not have "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014). Additionally, discovery is "fluid such that parties can[] change their views of the necessity of certain information or their theories of the case during the course of discovery as new facts and relationships are revealed and explained." *Id.* at 926. In this case, the representations made in the Decadian marketing materials, if false, are the exact types of misrepresentations that violate Sections 4b and 4*o* of the Act.[2] Accordingly, document requests relating to those representations are relevant and discoverable under Rule 26.

---

[2] *See, e.g.*, *Arrington*, 998 F. Supp. 2d at 866 (finding misrepresentations about past returns and trading methodology violated Sections 4b and 4*o* of the CEA); *CFTC v. R.J. Fitzgerald & Co.*, 310 F.3d 1321, 1329 (11th Cir. 2002) (holding that commercial that "overemphasizes profit potential and downplays risk of loss" violated the CEA); *CFTC v. Wilson*, 19 F. Supp. 3d 352, 362 (D. Mass. 2014) (finding misrepresentations about asset value of commodity pool violated the CEA).

3. **<u>Defendants' Refusal to Produce a Privilege Log</u>**

Defendants have also refused to produce a privilege log. Plaintiff requests that Defendants be compelled to do so for any responsive documents withheld as privileged.

Dated: March 8, 2022             Respectfully submitted,

                                    /s/ Aimée Latimer-Zayets

Aimée Latimer-Zayets, DC Bar No. 476693
Glenn I. Chernigoff, D.C. Bar No. 488500
Sean P. Hennessy, DC Bar No. 1011564
COMMODITY FUTURES TRADING COMMISSION
1155 21st Street, N.W.
Washington, D.C. 20581
alatimer-zayets@cftc.gov
gchernigoff@cftc.gov
shennessy@cftc.gov
(202) 418-7626 (direct) (Latimer-Zayets)
(202) 418-5937 (facsimile)

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** | ) ) ) | **Case No. 8:21-cv-00311-JMG-MDN** |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | **PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT TERRY MICHAEL SVEJDA** |
| **CENTURION CAPITAL MANAGEMENT, INC. AND TERRY MICHAEL SVEJDA,** | ) ) ) ) | |
| **Defendants.** | ) ) ) | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Rule"), Plaintiff Commodity Futures Trading Commission ("Commission"), hereby serves its First Set of Requests for Production of Documents ("Requests") on Defendant Terry Michael Svejda ("Svejda"). Svejda's response to these Requests must be served within 30 days of service, and the production and response must be supplemented in accordance with Rule 26(e).

## A.   INSTRUCTIONS

1.     Each request for production of documents must be responded to separately.

2.     These Requests seek production of all responsive documents in your possession, custody, or control, including documents held by any agent such as your

attorney, accountant, employee, or financial advisor.

3.    These Requests seek production of all responsive documents in their entirety, without abbreviation, redaction or expurgation, including all attachments at any time affixed thereto.

4.    The discovery requested herein, unless otherwise specified (as, for example, by use of the word "ever" or the phrase "at any time" or "of any date"), and without regard to the tenses used in any request, covers the period from January 1, 2015 to the present (the "Relevant Time Period").

5.    Unless otherwise specified, any word used herein in the singular is also to be construed in the plural and vice versa and any use of the conjunctive is also to be construed in the disjunctive and vice versa.  Any use of "any" is also to be construed as "all" and vice versa, and any use of "each" is also to be construed as "every" and vice versa.

6.    These requests require supplemental or amended responses in accordance with Rule 26(e).  These Requests shall be deemed to be continuing requests for supplemental responses pursuant to Rule 26(e), so as to require additional production if you obtain further information between the time documents are produced and the time of trial of this action.

7.    If, in answering any of these requests, you wish to assert or rely upon a privilege or any rule protecting against disclosure of a document or communication, you may specify such privilege or other protective rule in lieu of producing the

documents.  However, in that event, separately with respect to each such document, you must:

    a.    provide sufficient information:

        i.    to permit the allegedly privileged information to be identified in a motion to compel production, and

        ii.    to explain the basis for the claim of privilege in order that a court can determine its propriety;

    b.    identify any allegedly privileged document in all respects, except as to that portion of the document which is claimed to be privileged, including without limitation the following:

        i.    the title and/or a brief description of the type of document;

        ii.    the date of preparation and/or the date appearing on the document;

        iii.    the name, title and job description of the transmitter of the document;

        iv.    the name, title and job description of the person to whom the document was addressed;

        v.    the name, title and job description of each person who has received or had access to the document;

        vi.    a brief description of the subject matter of the document; and

vii.    the nature of the privilege claimed.

8.      If any responsive document was, but no longer is, in your possession, custody or control, state whether it has been lost, destroyed, transferred, purged, or otherwise disposed of, and for each such instance provide the following information:

a.      the type, title, date and author or preparer of the document;

b.      a description of the document's subject matter and physical size;

c.      the date of the document's loss, distribution, purge or separation from your possession or control;

d.      the circumstances surrounding the document's loss, destruction, purge or separation from your possession or control; and

e.      the document's present or last known location, including the name, address and telephone number of each person believed to have possession of such document.

9.      Documents not otherwise responsive to the below requests should be produced if those documents are or were attached to, or enclosed with any documents that are responsive to this request.  Such attached or enclosed documents include, but are not limited to, routing slips, transmittal memoranda, letters, comments, evaluations and similar documents.

## B.   DEFINITIONS

1.   The terms "you" and "your" mean Defendant Terry Michael Svejda, and include any of your accountants, attorneys, agents, assigns, beneficiaries, employees, heirs, predecessors, representatives, successors, and any related corporations, proprietorships, associates, or organizations, and/or other person acting or purporting to act for or on your behalf.

2.   The term "document" has the identical meaning as the term is used in Rule 34 and includes, but is not limited to the original, an identical copy when no original is available and all non-identical copies, drafts, versions of any writing, record, drawing, retrievable data of any type or description, correspondence, financial records, business records, reports, books, pamphlets, periodicals, price lists, advertisements, contracts, agreements, memoranda of understandings, promissory notes, guarantees, instruments, calendars, diaries, blueprints, papers, notes, memoranda, prints, sketches, indices, tapes, recordings, audiotapes, microfilms, microfiche, data processing cards, graphs, charts, photographs, photo-records, videotapes, motion pictures, other data compilations from which information can be obtained and any other tangible item upon which information is recorded or appears.

3.   The term "relating to" means relating, reflecting, regarding, containing, comprising, concerning, discussing, constituting, recording, pertaining or in any way referring or pursuant to.

4.      The term "possession" means actual or constructive possession and includes any document within your custody or control, any document that you have a legal right to obtain from another, and any document within the possession of your agents, employees, officers or directors, accountants, attorneys or representatives.

5.      The term "communication" refers to all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or otherwise.

6.      The term "account" refers to any and all types of financial accounts which were opened by you, for which your services are utilized, or for which you act as a fiduciary, including, but not limited to, commodities and/or commodity derivatives trading, checking, savings, loans, safekeeping, Master Card, Visa, American Express, Discover, other similar credit cards, certificates of deposit, and U.S. Treasury bills or notes.

7.      The term "Answer" refers to Svejda's written answer to the Commission's complaint in *CFTC v. Svejda, et al.*, 8:21-cv-00311-JMG-MDN (D. Neb.), dated and filed with the Court on October 15, 2021.

8.      The term "Initial Disclosures" refers to "Defendant's Rule 26 Initial Disclosures" in *CFTC v. Svejda, et al.*, 8:21-cv-00311-JMG-MDN (D. Neb.), dated November 15, 2021.

9.      The term "CPO" refers to a Commodity Pool Operator, as defined in 7

U.S.C. § 1a(11).

10. The term "AP" refers to an Associated Person, as defined in 7 U.S.C. § 6k(2).

11. The term "Executive Summary" refers to the document bates stamped CENTURION 000003 to CENTURION 000008, which Svejda produced to Plaintiff.

12. The term "Centurion" refers to Defendant Centurion Capital Management, Inc.

13. The term "Decadian" collectively refers to Decadian, LLC, an Arizona limited liability company, Decadian Strategies, Inc., an Arizona corporation, and Decadian Wealth Fund I, LLC, a Nebraska limited liability company, and all of their predecessors, affiliates, subsidiaries, directors, divisions, groups, offices, branches, departments, employees, consultants, agents, representatives, accountants, predecessors, or successors, wherever they may be situated.

## C. DOCUMENTS TO BE PRODUCED

**REQUEST NUMBER 1:**

All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Centurion.

**REQUEST NUMBER 2:**

All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Decadian, including all communications with the individuals listed in Exhibit A-1, Response No. 5, to Your May 14, 2020 letter to the Commission.

**REQUEST NUMBER 3:**

All documents relating to all accounts you own or control, including personal accounts, Centurion accounts, and Decadian accounts, and which contain funds you received from actual and potential customers, clients, investors and/or commodity pool participants, to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 4:**

All documents and communications relating to federal and/or state tax forms that you caused to be sent to Decadian and/or Centurion customers, clients, investors, and/or commodity pool participants, including all documents and communications relating to Internal Revenue Service Schedule K-1 (Form 1120-S), to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 5:**

All documents and communications relating to all transfers of funds between you and Centurion, to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 6:**

All documents relating to Decadian Wealth Fund I, LLC, to the extent such documents have not already been produced by you in response to the administrative subpoena issued by the Commission on April 30, 2020.

**REQUEST NUMBER 7:**

All communications between you and Mark D. Svejda, and all documents sent to or received from Mark D. Svejda, relating to Centurion and/or Decadian.

**REQUEST NUMBER 8:**

All communications between you, Doug Prewitt, and/or Scott Prewitt, and all documents sent to or received from Doug and/or Scott Prewitt, relating to Centurion and/or Decadian.

**REQUEST NUMBER 9:**

All documents related to the website, http://automatedentities.com/, referenced in

CENTURION 000019.

**REQUEST NUMBER 10:**

All communications between you and Robert G. Slonim, and/or IVEST, LLC, and all documents sent to or received from Slonim and/or IVEST, LLC, relating to Centurion and/or Decadian.

**REQUEST NUMBER 11:**

All documents relating to your statement in paragraph 17 of your Answer that "a copy of Decadian's Operating Agreement was provided to the investors in Decadian."

**REQUEST NUMBER 12:**

All documents relating to your statement in paragraph 18 of your Answer that "approximately 27 people made capital investments in Decadian."

**REQUEST NUMBER 13:**

All documents relating to your statement in paragraph 22 of your Answer that "Centurion was not required to register as a CPO."

**REQUEST NUMBER 14:**

All documents relating to your statement in paragraph 22 of your Answer that "Svejda was not required to register as an AP of Centurion."

**REQUEST NUMBER 15:** All documents relating to your statement in paragraph 64 of your Answer that the "Complaint fails to state a claim upon which relief can be granted."

**REQUEST NUMBER 16:**

All documents relating to your statement in paragraph 65 of your Answer that the "CFTC's claims are barred, in whole or in part, by the applicable statutes of limitation."

**REQUEST NUMBER 17:**

All documents identified by you in Section B. of your Initial Disclosures.

**REQUEST NUMBER 18:**

All documents relating to the "Decadian Methodology" set forth on pages 1 and 2 of the Executive Summary.

11

**REQUEST NUMBER 19:**

All documents that support each claim made in the Executive Summary.

Plaintiff Commodity Futures Trading Commission

By: _____

Glenn I. Chernigoff, Trial Attorney
D.C. Bar No. 488500
Aimée Latimer-Zayets, Chief Trial Attorney
D.C. Bar No. 476693
Division of Enforcement
Three Lafayette Centre
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5305 (Chernigoff)
Facsimile: (202) 418-5538
gchernigoff@cftc.gov

# CERTIFICATE OF SERVICE

I hereby certify that, on December 23, 2021, I caused "Plaintiff's First Set Of Requests For Production Of Documents To Defendant Terry Michael Svejda" to be sent by UPS, postage prepaid, return receipt requested to:

Adam W. Barney
Cline Williams Wright Johnson & Oldfather, L.L.P.
Sterling Ridge
12910 Pierce St. 200
Omaha, NE 68144

Counsel for Defendants

and I also emailed a copy to:

abarney@clinewilliams.com


Glenn I. Chernigoff
Trial Attorney
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Phone: (202) 418-5305
Facsimile: (202) 418-5523
Email: gchernigoff@cftc.gov
Attorney for Plaintiff

EXHIBIT 2

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION, ) | Case No. 8:21-cv-00311-JMG-MDN |
| Plaintiff, ) | |
| v. ) | PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO DEFENDANT CENTURION CAPITAL MANAGEMENT, INC. |
| CENTURION CAPITAL MANAGEMENT, INC. AND TERRY MICHAEL SVEJDA, ) | |
| Defendants. ) | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure ("Rule"), Plaintiff Commodity Futures Trading Commission ("Commission"), hereby serves its First Set of Requests for Production of Documents ("Requests") on Defendant Centurion Capital Management, Inc. ("Centurion"). Centurion's response to these Requests must be served within 30 days of service, and the production and response must be supplemented in accordance with Rule 26(e).

## A.    INSTRUCTIONS

1.    Each request for production of documents must be responded to separately.

2.    These Requests seek production of all responsive documents in Centurion's possession, custody, or control, including documents held by any

1

agent such as Centurion's attorney, accountant, employee, or financial advisor.

3.      These Requests seek production of all responsive documents in their entirety, without abbreviation, redaction or expurgation, including all attachments at any time affixed thereto.

4.      The discovery requested herein, unless otherwise specified (as, for example, by use of the word "ever" or the phrase "at any time" or "of any date"), and without regard to the tenses used in any request, covers the period from January 1, 2015 to the present (the "Relevant Time Period").

5.      Unless otherwise specified, any word used herein in the singular is also to be construed in the plural and vice versa and any use of the conjunctive is also to be construed in the disjunctive and vice versa. Any use of "any" is also to be construed as "all" and vice versa, and any use of "each" is also to be construed as "every" and vice versa.

6.      These requests require supplemental or amended responses in accordance with Rule 26(e). These Requests shall be deemed to be continuing requests for supplemental responses pursuant to Rule 26(e), so as to require additional production if Centurion obtains further information between the time documents are produced and the time of trial of this action.

7.      If, in answering any of these requests, Centurion wishes to assert or rely upon a privilege or any rule protecting against disclosure of a document or

communication, Centurion may specify such privilege or other protective rule in lieu of producing the documents. However, in that event, separately with respect to each such document, Centurion must:

    a.    provide sufficient information:

        i.    to permit the allegedly privileged information to be identified in a motion to compel production, and

        ii.    to explain the basis for the claim of privilege in order that a court can determine its propriety;

    b.    identify any allegedly privileged document in all respects, except as to that portion of the document which is claimed to be privileged, including without limitation the following:

        i.    the title and/or a brief description of the type of document;

        ii.    the date of preparation and/or the date appearing on the document;

        iii.    the name, title and job description of the transmitter of the document;

        iv.    the name, title and job description of the person to whom the document was addressed;

        v.    the name, title and job description of each person who

has received or had access to the document;

vi.    a brief description of the subject matter of the document; and

vii.   the nature of the privilege claimed.

8.    If any responsive document was, but no longer is, in Centurion's possession, custody or control, state whether it has been lost, destroyed, transferred, purged, or otherwise disposed of, and for each such instance provide the following information:

a.    the type, title, date and author or preparer of the document;

b.    a description of the document's subject matter and physical size;

c.    the date of the document's loss, distribution, purge or separation from Centurion's possession or control;

d.    the circumstances surrounding the document's loss, destruction, purge or separation from Centurion's possession or control; and

e.    the document's present or last known location, including the name, address and telephone number of each person believed to have possession of such document.

9.    Documents not otherwise responsive to the below requests should be produced if those documents are or were attached to, or enclosed with any

4

documents that are responsive to this request.  Such attached or enclosed

documents include, but are not limited to, routing slips, transmittal memoranda,

letters, comments, evaluations and similar documents.


**B.    DEFINITIONS**

1.    The term "Centurion" means Defendant Centurion Capital

Management, Inc., and includes any of Centurion's accountants, attorneys, agents,

assigns, beneficiaries, employees, heirs, predecessors, representatives, successors,

and any related corporations, proprietorships, associates, or organizations, and/or

other person acting or purporting to act for or on its behalf.

2.    The term "document" has the identical meaning as the term is used in

Rule 34 and includes, but is not limited to the original, an identical copy when no

original is available and all non-identical copies, drafts, versions of any writing,

record, drawing, retrievable data of any type or description, correspondence,

financial records, business records, reports, books, pamphlets, periodicals, price

lists, advertisements, contracts, agreements, memoranda of understandings,

promissory notes, guarantees, instruments, calendars, diaries, blueprints, papers,

notes, memoranda, prints, sketches, indices, tapes, recordings, audiotapes,

microfilms, microfiche, data processing cards, graphs, charts, photographs, photo-

records, videotapes, motion pictures, other data compilations from which

5

information can be obtained and any other tangible item upon which information is recorded or appears.

3.      The term "relating to" means relating, reflecting, regarding, containing, comprising, concerning, discussing, constituting, recording, pertaining or in any way referring or pursuant to.

4.      The term "possession" means actual or constructive possession and includes any document within Centurion's custody or control, any document that Centurion has a legal right to obtain from another, and any document within the possession of Centurion's agents, employees, officers or directors, accountants, attorneys or representatives.

5.      The term "communication" refers to all manners of transmitting or receiving information, opinions, or thoughts, orally, in writing, in person, telephonically, electronically, or otherwise.

6.      The term "account" refers to any and all types of financial accounts which were opened by Centurion, for which Centurion's services are utilized, or for which Centurion acts as a fiduciary, including, but not limited to, commodities and/or commodity derivatives trading, checking, savings, loans, safekeeping, Master Card, Visa, American Express, Discover, other similar credit cards, certificates of deposit, and U.S. Treasury bills or notes.

7.      The term "Answer" refers to Centurion's written answer to the

6

Commission's complaint in *CFTC v. Svejda, et al.*, 8:21-cv-00311-JMG-MDN (D. Neb.), dated and filed with the Court on October 15, 2021.

8.     The term "Initial Disclosures" refers to "Defendant's Rule 26 Initial Disclosures" in *CFTC v. Svejda, et al.*, 8:21-cv-00311-JMG-MDN (D. Neb.), dated November 15, 2021.

9.     The term "CPO" refers to a Commodity Pool Operator, as defined in 7 U.S.C. § 1a(11).

10.     The term "AP" refers to an Associated Person, as defined in 7 U.S.C. § 6k(2).

11.     The term "Executive Summary" refers to the document bates stamped CENTURION 000003 to CENTURION 000008, which Centurion produced to Plaintiff.

12.     The term "Decadian" collectively refers to Decadian, LLC, an Arizona limited liability company, Decadian Strategies, Inc., an Arizona corporation, and Decadian Wealth Fund I, LLC, a Nebraska limited liability company, and all of their predecessors, affiliates, subsidiaries, directors, divisions, groups, offices, branches, departments, employees, consultants, agents, representatives, accountants, predecessors, or successors, wherever they may be situated.

## C.    DOCUMENTS TO BE PRODUCED

**REQUEST NUMBER 1:**

All communications with Centurion's actual and potential customers, clients, investors,  commodity pool participants, and/or any other third parties.

**REQUEST NUMBER 2:**

All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Decadian, including all communications with the individuals listed in Exhibit A-1, Response No. 5, to Centurion's May 14, 2020 letter to the Commission.

**REQUEST NUMBER 3:**

All documents relating to all accounts Centurion owns or controls, including personal accounts, and Decadian accounts, and which contain funds Centurion received from actual and potential customers, clients, investors and/or commodity pool participants, to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 4:**

All documents and communications relating to federal and/or state tax forms that Centurion caused to be sent to Decadian and/or Centurion customers, clients, investors, and/or commodity pool participants, including all documents and communications relating to Internal Revenue Service Schedule K-1 (Form 1120-S), to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 5:**

All documents and communications relating to all transfers of funds related in any way to Centurion, to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**REQUEST NUMBER 6:**

All documents relating to Decadian Wealth Fund I, LLC, to the extent such documents have not already been produced by Centurion in response to the administrative subpoena issued by the Commission on April 30, 2020.

**REQUEST NUMBER 7:**

All communications between Centurion and Mark D. Svejda, and all documents

sent to or received from Mark D. Svejda, relating to Centurion and/or Decadian.

**REQUEST NUMBER 8:**

All communications between Centurion, Doug Prewitt, and/or Scott Prewitt, and all documents sent to or received from Doug and/or Scott Prewitt, relating to Centurion and/or Decadian.

**REQUEST NUMBER 9:**

All documents related to the website, http://automatedentities.com/, referenced in CENTURION 000019.

**REQUEST NUMBER 10:**

All communications between Centurion and Robert G. Slonim, and/or IVEST, LLC, and all documents sent to or received from Slonim and/or IVEST, LLC, relating to Centurion and/or Decadian.

**REQUEST NUMBER 11:**

All documents relating to Centurion's statement in paragraph 17 of its Answer that "a copy of Decadian's Operating Agreement was provided to the investors in Decadian."

**REQUEST NUMBER 12:**

All documents relating to Centurion's statement in paragraph 18 of its Answer that "approximately 27 people made capital investments in Decadian."

**REQUEST NUMBER 13:**

All documents relating to Centurion's statement in paragraph 22 of its Answer that "Centurion was not required to register as a CPO."

**REQUEST NUMBER 14:**

All documents relating to Centurion's statement in paragraph 22 of its Answer that "Svejda was not required to register as an AP of Centurion."

**REQUEST NUMBER 15:**

All documents relating to Centurion's statement in paragraph 64 of its Answer that the "Complaint fails to state a claim upon which relief can be granted."

**REQUEST NUMBER 16:**

All documents relating to Centurion's statement in paragraph 65 of its Answer that the "CFTC's claims are barred, in whole or in part, by the applicable statutes of

limitation."

**REQUEST NUMBER 17:**

All documents identified by Centurion in Section B. of its Initial Disclosures.

**REQUEST NUMBER 18:**

All documents relating to the "Decadian Methodology" set forth on pages 1 and 2 of the Executive Summary.

**REQUEST NUMBER 19:**

All documents that support each claim made in the Executive Summary.

Plaintiff Commodity Futures Trading Commission

By: _Glenn I. Chernigoff_
Glenn I. Chernigoff, Trial Attorney
D.C. Bar No. 488500
Aimée Latimer-Zayets, Chief Trial Attorney
D.C. Bar No. 476693
Division of Enforcement
Three Lafayette Centre
1155 21st Street NW
Washington, DC 20581
Telephone: (202) 418-5305 (Chernigoff)
Facsimile: (202) 418-5538
gchernigoff@cftc.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on December 23, 2021, I caused "Plaintiff's First Set

Of Requests For Production Of Documents To Defendant Centurion Capital

Management, Inc." to be sent by UPS, postage prepaid, return receipt requested to:

> Adam W. Barney
> Cline Williams  Wright Johnson & Oldfather, L.L.P.
> Sterling Ridge
> 12910 Pierce St. 200
> Omaha, NE 68144
>
> Counsel for Defendants

and I also emailed a copy to:

> abarney@clinewilliams.com

> _____
> Glenn I. Chernigoff
> Trial Attorney
> Division of Enforcement
> Commodity Futures Trading Commission
> 1155 21st Street, N.W.
> Washington, D.C. 20581
> Phone: (202) 418-5305
> Facsimile: (202) 418-5523
> Email: gchernigoff@cftc.gov
> Attorney for Plaintiff

# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Case No.: 8:21-cv-00311 |
| Plaintiff, | ) ) | |
| v. | ) ) | DEFENDANT TERRY MICHAEL SVEJDA'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS |
| CENTURION CAPITAL MANAGEMENT, INC. and TERRY MICHAEL SVEJDA, | ) ) ) ) | |
| Defendants. | ) ) | |

TO:  COMMODITY FUTURES TRADING COMMISSION, Plaintiff, by and through its attorneys of record.

## GENERAL OBJECTIONS

Defendant Terry Michael Svejda ("Svejda") objects to the instructions to the extent they are inconsistent with, or impose obligations beyond, the Federal Rules of Civil Procedure. Svejda will answer the Requests for Production of Documents in accordance with the Federal Rules of Civil Procedure.

Svejda objects to the Definitions on the grounds that they are unduly burdensome. For example, the term Decadian encompasses multiple, distinct business entities with different business and purposes, together with any and all persons that have ever been affiliated with those entities. Giving Decadian the definition posed by the CFTC would make some of the requests illogical and would result in confusion. Subject to and without waiving the foregoing objections, Svejda will respond to the Requests for Production while giving ordinary meaning to the words contained therein, and consistent with the

1

Federal Rules of Civil Procedure. Further, Svejda will respond to the Requests for Production by interpreting Centurion as Centurion Capital Management, Inc. and by interpreting Decadian as Decadian LLC.

## REQUESTS

**REQUEST NO. 1:** All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Centurion.

**RESPONSE:** Svejda objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Svejda further objects that Request No. 1 is vague and ambiguous in that it is unclear whether the CFTC is seeking communications with "actual and potential customers, clients, investors, [and] commodity pool participants" of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. In further support of these objections, Svejda states that Request No. 1 is not limited in time. Additionally, the request is so broad as to encompass nearly every email or other communication related to Centurion, when the allegations in the Complaint refer to alleged wrongdoing with respect to a different entity, that being Decadian.

**REQUEST NO. 2:**   All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Decadian, including all communications with the individuals listed in Exhibit A-1, Response No. 5, to Your May 14, 2020 letter to the Commission.

**RESPONSE:**        Svejda objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Svejda further objects that Request No. 2 is vague and ambiguous in that it is unclear whether the CFTC is seeking communications with "actual and potential customers, clients, investors, [and] commodity pool participants" of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. In further support of these objections, Svejda states that Request No. 2 is not limited in time. Additionally, Request No. 2 goes well beyond the limited allegations in the Complaint (i.e. fraud and failure to register) and seeks all communications related to the entity. Subject to and without waiving the foregoing objections, Svejda will produce copies of all solicitations sent to the individuals listed in Exhibit A-1, Response No. 5, to Svejda's May 14, 2020 letter to the CFTC.

**REQUEST NO. 3:**  All documents relating to all accounts you own or control, including personal accounts, Centurion accounts, and Decadian accounts, and which contain funds you received from actual and potential

customers, clients, investors and/or commodity pool participants, to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**RESPONSE:**      Svejda objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 3 seeks all documents related to accounts, rather than account statements, and is unlimited in time. Additionally, Svejda objects that Request No. 3 is vague and ambiguous in that it seeks documents related to accounts which contain funds received from "actual and potential customers, clients, investors, and/or commodity pool participants," without specifying whether those customers/clients/investors/ participants are of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. Further the request is vague in that funds received from customers/clients/investors/participants were not held on behalf of said individuals. Subject to and without waiving the foregoing objections, Svejda will produce all account statements, from January 1, 2016 through August 2021, for checking, savings, and commodity accounts he controlled.


**REQUEST NO. 4:**  All documents and communications relating to federal and/or state tax forms that you caused to be sent to Decadian and/or Centurion customers, clients, investors, and/or commodity pool participants, including all documents and communication relating to Internal Revenue Service Schedule K-

4

1 (Form 1120-S), to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**RESPONSE:**     Svejda objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 4 seeks all documents and communications related to related to federal and state tax forms, and not just the tax forms themselves. Svejda further objects that Request No. 4 is overbroad in that it is not limited in time and that the tax forms for Centurion are not relevant to the issues in the case. Subject to and without waiving the foregoing objections, Svejda will produce all tax forms for Decadian for the tax years 2016 through 2020.

**REQUEST NO. 5:**  All documents and communications relating to all transfers of funds between you and Centurion, to the extent such documents have not already been produced by you in response to an administrative subpoena issued by the Commission.

**RESPONSE:**     Svejda objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Subject to and without waiving the foregoing objections, see documents produced in response to Request No. 3.

**REQUEST NO. 6:** All documents relating to Decadian Wealth Fund I, LLC, to the extent such documents have not already been produced by you in

5

response to the administrative subpoena issued by the Commission on April 30, 2020.

**RESPONSE:**       Svejda objects to Request No. 6 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 6 is not limited in time and seeks all documents related to an entire entity and business. In further support of his objections, Svejda states that the CFTC does not allege any wrongdoing with respect to Decadian Wealth Fund I, LLC, which was properly registered. Subject to and without waiving the foregoing objections, Svejda will produce copies of the Operating Agreement for Decadian Wealth Fund I, LLC and documents and communications submitted to the NFA with respect to the registration of Decadian Wealth Fund I, LLC.

**REQUEST NO. 7:**  All communications between you and Mark D. Svejda, and all documents sent to or received from Mark D. Svejda, relating to Centurion and/or Decadian.

**RESPONSE:**       Svejda objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 7 is not limited in time. Svejda further objects to the extent Request No. 7 seeks production of documents that are protected by the attorney-client privilege in that it requests the production of all documents between Mark D. Svejda, Esq., related to Centurion and Decadian, entity for which he provided legal counsel.

**REQUEST NO. 8:**  All communications between you, Doug Prewitt, and/or Scott Prewitt, and all documents sent to or received from Doug and/or Scott Prewitt, relating to Centurion and/or Decadian.

**RESPONSE:**       Svejda objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 8 is not limited in time. Further, neither Doug Prewitt nor Scott Prewitt were investors in Centurion or Decadian and communications with those individuals are not relevant to the limited claims raised in the Complaint.

**REQUEST  NO.  9:**       All  documents  related  to  the  website, http://automatedentities.com, referenced in CENTURION000019.

**RESPONSE:**       Svejda objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that the CFTC has raised claims for failure to register and for defrauding investors by telling them their funds would be used for a commodities pool, but they were not so used, which are unrelated to the documents requested.

**REQUEST NO. 10:**  All communications between you and Robert G. Slonim, and or IVEST, LLC, and all documents sent to or received from Slonim and/or IVEST, LLC, relating to Centurion and/or Decadian.

7

**RESPONSE:**     Svejda objects to Request No. 10 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 10 is not limited in time. Further, Robert G. Slonim was not an investor in Centurion or Decadian and communications with him are not relevant to the limited claims raised in the Complaint.

**REQUEST NO. 11:** All documents relating to your statement in paragraph 17 of your Answer that "a copy of Decadian's Operating Agreement was provided to the investors in Decadian".

**RESPONSE:**     Svejda objects to Request No. 11 on the grounds that it is vague and ambiguous. In paragraph 17 of its Complaint, the CFTC alleged that "Decadian's Operating Agreement, which Svejda provided to Decadian pool participants, stated . . . ." The allegation was inaccurate in that it portrayed Decadian investors as pool participants, when the investor's funds were not solicited for the purpose of operating a commodities pool. Thus, in response, Svejda admitted the Operating Agreement was provided to those individuals but corrected the role of said individuals. By way of the Complaint and Answer, the fact that the Operating Agreement was provided to investors/pool participants is established. Subject to and without waiving the foregoing objections, Svejda will produce a signature pages for Decadian's Operating Agreement for each investor/member of Decadian.

**REQUEST NO. 12:** All documents relating to your statement in paragraph 18 of your Answer that "approximately 27 people made capital investments in Decadian".

**RESPONSE:** Svejda objects to Request No. 12 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. It is unclear what the CFTC seeks in response to Request No. 12. Subject to and without waiving the foregoing objections, Svejda states that he has already disclosed the identity of the 27 people who made capital investments in Decadian.

**REQUEST NO. 13:** All documents relating to your statement in paragraph 22 of your Answer that "Centurion was not required to register as a CPO".

**RESPONSE:** Svejda objects to Request No. 13 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. Request No. 13 effectively asks Svejda to produce all documents that would prove a negative, which Svejda would have to speculate to identify and produce. It is the CFTC's burden in this enforcement action to prove that Centurion was required to register as a CPO. Svejda further objects to Request No. 13 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 14:** All documents relating to your statement in paragraph 22 of your Answer that "Svejda was not required to register as an AP of Centurion".

9

**RESPONSE:**          Svejda objects to Request No. 14 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. Request No. 14 effectively asks Svejda to produce all documents that would prove a negative, which Svejda would have to speculate to identify and produce. It is the CFTC's burden in this enforcement action to prove that Svejda was required to register as an AP of Centurion. Svejda further objects to Request No. 14 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 15:**  All documents relating to your statement in paragraph 64 of your Answer that the "Complaint fails to state a claim upon which relief can be granted".

**RESPONSE:**          Svejda objects to Request No. 15 on the grounds that it is vague and ambiguous. Svejda further objects to Request No. 15 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 16:**  All documents relating to your statement in paragraph 65 of your Answer that the "CFTC's claims are barred, in whole or in part, by the applicable statute of limitation".

**RESPONSE:**          Svejda objects to Request No. 16 on the grounds that it is vague and ambiguous and overbroad and unduly burdensome. Svejda further objects to Request No. 15 to the extent it seeks to invade the attorney-client privilege or work product of his counsel. Subject to and without waiving the foregoing objections, Svejda will produce sufficient documents to establish that

certain investments covered by the allegations made in the Complaint are barred by the applicable statute of limitation.

**REQUEST NO. 17:**  All documents identified by you in Section B of your Initial Disclosures.

**RESPONSE:**        Responsive documents will be produced.

**REQUEST NO. 18:**  All documents relating to the "Decadian Methodology" set forth on pages 1 and 2 of the Executive Summary.

**RESPONSE:**        Svejda objects to Request No. 18 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. The Decadian Methodology described in pages 1 and 2 of the Executive Summary is a methodology developed by Svejda over many years, which has been deployed to hundreds of individuals for many years through, primarily, newsletters that are sent to individuals capable of directly managing their own investments and without regard to the specifics of those individual's assets or investment objectives. Locating and producing all documents regarding the Decadian Methodology would be an incalculable task. Further, the Decadian Methodology is not the subject of the claims raised by the CFTC.

**REQUEST NO. 19:**  All documents that support each claim made in the Executive Summary.

11

**RESPONSE:**        Svejda objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. The only allegation of fraud made by the CFTC in this action is that Svejda informed "pool participants" that Defendants would invest "pool participant funds" in exchange-traded futures contracts, and instead used "pool participant funds" to pay personal expenses of Svejda and corporate expenses of Centurion. The Executive Summary identified in Request No. 19 was part of the solicitation made to investors of Decadian and unequivocally refutes the CFTC's allegation, specifically stating that investor funds would be used for marketing, advertising, legal, and staffing. The CFTC's request for Svejda to produce all documents that support any other statement made in the Executive Summary goes well-beyond the allegations in the Complaint and clearly constitutes a fishing expedition which is overbroad, unduly burdensome, and not relevant or proportional to the needs of the case.

CENTURION CAPITAL MANAGEMENT, INC. and
TERRY MICHAEL SVEJDA, Defendants

By:    s/ Adam W. Barney
        Adam W. Barney #24521
          CLINE WILLIAMS
        WRIGHT JOHNSON & OLDFATHER, L.L.P.
        Sterling Ridge
        12910 Pierce Street, Suite 200
        Omaha, NE  68144
        Telephone:  (402) 397-1700
        Facsimile:  (402) 397-1806
        abarney@clinewilliams.com

## CERTIFICATE OF SERVICE

I, Adam W. Barney, hereby certify that on January 26, 2022, a copy of the foregoing document was emailed to counsel at the following email address(es):

Glen I. Chernigoff
U.S. CFTC
gchernigoff@cftc.gov

Aimee Latimer-Zayets
U.S. Commodity Futures Trading Commission
Alatimer-zayets@cftc.gov


   s/ Adam W. Barney_____

EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| COMMODITY FUTURES TRADING COMMISSION, | ) ) ) | Case No.: 8:21-cv-00311 |
| Plaintiff, | ) ) | |
| v. | ) ) ) | DEFENDANT CENTURION CAPITAL MANAGEMENT, INC.'S RESPONSE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS |
| CENTURION CAPITAL MANAGEMENT, INC. and TERRY MICHAEL SVEJDA, | ) ) ) ) | |
| Defendants. | ) ) | |

TO:   COMMODITY FUTURES TRADING COMMISSION, Plaintiff, by and through its attorneys of record

## GENERAL OBJECTIONS

Defendant Centurion Capital Management, Inc. objects to the instructions to the extent they are inconsistent with, or impose obligations beyond, the Federal Rules of Civil Procedure.  Defendant Centurion Capital Management, Inc. will answer the Requests for Production of Documents in accordance with the Federal Rules of Civil Procedure.

Centurion objects to the Definitions on the grounds that they are unduly burdensome. For example, the term Decadian encompasses multiple, distinct business entities with different business and purposes, together with any and all persons that have ever been affiliated with those entities. Giving Decadian the definition posed by the CFTC would make some of the requests illogical and would result in confusion. Subject to and without waiving the foregoing objections, Centurion will respond to the Requests for Production while giving

ordinary meaning to the words contained therein, and consistent with the Federal Rules of Civil Procedure. Further, Centurion will respond to the Requests for Production by interpreting Centurion as Centurion Capital Management, Inc. and by interpreting Decadian as Decadian LLC.

## REQUESTS

**REQUEST NO. 1:** All communications with Centurion's actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties.

**RESPONSE:** Centurion objects to Request No. 1 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Centurion further objects that Request No. 1 is vague and ambiguous in that it is unclear whether the CFTC is seeking communications with "actual and potential customers, clients, investors, [and] commodity pool participants" of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. In further support of these objections, Centurion states that Request No. 1 is not limited in time. Additionally, the request is so broad as to encompass nearly every email or other communication related to Centurion, when the allegations in the Complaint refer to alleged wrongdoing with respect to a different entity, that being Decadian.

**REQUEST NO. 2:**    All communications with actual and potential customers, clients, investors, commodity pool participants, and/or any other third parties, related to Decadian, including all communications with the individuals listed in Exhibit A-1, Response No. 5, to Centurion's May 14, 2020 letter to the Commission.

**RESPONSE:**        Centurion objects to Request No. 2 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Centurion further objects that Request No. 2 is vague and ambiguous in that it is unclear whether the CFTC is seeking communications with "actual and potential customers, clients, investors, [and] commodity pool participants" of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. In further support of these objections, Centurion states that Request No. 2 is not limited in time. Additionally, Request No. 2 goes well beyond the limited allegations in the Complaint (i.e. fraud and failure to register) and seeks all communications related to the entity. Subject to and without waiving the foregoing objections, Centurion will produce copies of all solicitations sent to the individuals listed in Exhibit A-1, Response No. 5, to Centurion's May 14, 2020 letter to the CFTC.

**REQUEST NO. 3:** All documents relating to all accounts Centurion owns or controls, including personal accounts and Decadian accounts, and which contain funds Centurion received from actual and potential customers, clients,

investors and/or commodity pool participants, to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**RESPONSE:**        Centurion objects to Request No. 3 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 3 seeks all documents related to accounts, rather than account statements, and is unlimited in time. Additionally, Centurion objects that Request No. 3 is vague and ambiguous in that it seeks documents related to accounts which contain funds received from "actual and potential customers, clients, investors, and/or commodity pool participants," without specifying whether those customers/clients/investors/ participants are of Centurion, Decadian, or the actual pool entity created and properly registered, that being Decadian Wealth Fund I, LLC. Further the request is vague in that funds received from customers/clients/investors/participants were not held on behalf of said individuals. Subject to and without waiving the foregoing objections, Centurion will produce all account statements, from January 1, 2016 through August 2021, for checking, savings, and commodity accounts under Centurion's name.


**REQUEST NO. 4:** All documents and communications relating to federal and/or state tax forms that Centurion caused to be sent to Decadian and/or Centurion customers, clients, investors, and/or commodity pool participants, including all documents and communication relating to Internal Revenue Service

Schedule K-1 (Form 1120-S), to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**RESPONSE:**     Centurion objects to Request No. 4 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 4 seeks all documents and communications related to related to federal and state tax forms, and not just the tax forms themselves. Centurion further objects that Request No. 4 is overbroad in that it is not limited in time and that the tax forms for Centurion are not relevant to the issues in the case. Subject to and without waiving the foregoing objections, Centurion will produce all tax forms for Decadian for the tax years 2016 through 2020.

**REQUEST NO. 5:**  All documents and communications relating to all transfers of funds related in any way to Centurion, to the extent such documents have not already been produced by Centurion in response to an administrative subpoena issued by the Commission.

**RESPONSE:**     Centurion objects to Request No. 5 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. Centurion further objects that the phrase "funds related in any way to Centurion" is vague and ambiguous, overbroad, and unduly burdensome. Subject to and without waiving the foregoing objections, see documents produced in response to Request No. 3.

**REQUEST NO. 6:** All documents relating to Decadian Wealth Fund I, LLC, to the extent such documents have not already been produced by Centurion in response to the administrative subpoena issued by the Commission on April 30, 2020.

**RESPONSE:** Centurion objects to Request No. 6 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case in that Request No. 6 is not limited in time and seeks all documents related to an entire entity and business. In further support of its objections, Centurion states that the CFTC does not allege any wrongdoing with respect to Decadian Wealth Fund I, LLC, which was properly registered. Subject to and without waiving the foregoing objections, Centurion will produce copies of the Operating Agreement for Decadian Wealth Fund I, LLC and documents and communications submitted to the NFA with respect to the registration of Decadian Wealth Fund I, LLC.

**REQUEST NO. 7:** All communications between Centurion and Mark D. Svejda, and all documents sent to or received from Mark D. Svejda, relating to Centurion and/or Decadian.

**RESPONSE:** Centurion objects to Request No. 7 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 7 is not limited in time. Centurion further objects to the extent Request No. 7 seeks production of

documents that are protected by the attorney-client privilege in that it requests the production of all documents between Mark D. Svejda, Esq., related to Centurion and Decadian, entity for which he provided legal counsel.

**REQUEST NO. 8:**  All communications between Centurion, Doug Prewitt, and/or Scott Prewitt, and all documents sent to or received from Doug and/or Scott Prewitt, relating to Centurion and/or Decadian.

**RESPONSE:**        Centurion objects to Request No. 8 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 8 is not limited in time. Further, neither Doug Prewitt nor Scott Prewitt were investors in Centurion or Decadian and communications with those individuals are not relevant to the limited claims raised in the Complaint.

**REQUEST NO. 9:**  All documents related to the website, http://automatedentities.com, referenced in CENTURION000019.

**RESPONSE:**        Centurion objects to Request No. 9 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that the CFTC has raised claims for failure to register and for defrauding investors by telling them their funds would be used for a commodities pool, but they were not so used, which are unrelated to the documents requested.

**REQUEST NO. 10:**  All communications between Centurion and Robert G. Slonim, and or IVEST, LLC, and all documents sent to or received from Slonim and/or IVEST, LLC, relating to Centurion and/or Decadian.

**RESPONSE:**     Centurion objects to Request No. 10 on the grounds that it is overbroad, unduly burdensome, seeks documents that are not relevant or proportional to the needs of the case in that Request No. 10 is not limited in time. Further, Robert G. Slonim was not an investor in Centurion or Decadian and communications with him are not relevant to the limited claims raised in the Complaint.

**REQUEST NO. 11:**  All documents relating to Centurion's statement in paragraph 17 of its Answer that "a copy of Decadian's Operating Agreement was provided to the investors in Decadian".

**RESPONSE:**     Centurion objects to Request No. 11 on the grounds that it is vague and ambiguous. In paragraph 17 of its Complaint, the CFTC alleged that "Decadian's Operating Agreement, which Svejda provided to Decadian pool participants, stated . . . ." The allegation was inaccurate in that it portrayed Decadian investors as pool participants, when the investor's funds were not solicitated for the purpose of operating a commodities pool. Thus, in response, Centurion admitted the Operating Agreement was provided to those individuals but corrected the role of said individuals. By way of the Complaint and Answer, the fact that the Operating Agreement was provided to investors/pool participants is established. Subject to and without waiving the

foregoing objections, Centurion will produce a signature pages for Decadian's Operating Agreement for each investor/member of Decadian.

**REQUEST NO. 12:**  All documents relating to Centurion's statement in paragraph 18 of its Answer that "approximately 27 people made capital investments in Decadian".

**RESPONSE:**      Centurion objects to Request No. 12 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. It is unclear what the CFTC seeks in response to Request No. 12. Subject to and without waiving the foregoing objections, Centurion states that it has already disclosed the identity of the 27 people who made capital investments in Decadian.

**REQUEST NO. 13:**  All documents relating to Centurion's statement in paragraph 22 of its Answer that "Centurion was not required to register as a CPO".

**RESPONSE:**      Centurion objects to Request No. 13 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. Request No. 13 effectively asks Centurion to produce all documents that would prove a negative, which Centurion would have to speculate to identify and produce. It is the CFTC's burden in this enforcement action to prove that Centurion was required to register as a CPO. Centurion further objects to Request No. 13 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 14:**  All documents relating to Centurion's statement in paragraph 22 of its Answer that "Svejda was not required to register as an AP of Centurion".

**RESPONSE:**       Centurion objects to Request No. 14 on the grounds that it is vague and ambiguous, overbroad, and unduly burdensome. Request No. 14 effectively asks Centurion to produce all documents that would prove a negative, which Centurion would have to speculate to identify and produce. It is the CFTC's burden in this enforcement action to prove that Svejda was required to register as an AP of Centurion. Centurion further objects to Request No. 14 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 15:**  All documents relating to Centurion's statement in paragraph 64 of its Answer that the "Complaint fails to state a claim upon which relief can be granted".

**RESPONSE:**       Centurion objects to Request No. 15 on the grounds that it is vague and ambiguous. Centurion further objects to Request No. 15 to the extent it seeks to invade the attorney-client privilege or work product of his counsel.

**REQUEST NO. 16:**  All documents relating to Centurion's statement in paragraph 65 of its Answer that the "CFTC's claims are barred, in whole or in part, by the applicable statute of limitation".

**RESPONSE:**      Centurion objects to Request No. 16 on the grounds that it is vague and ambiguous and overbroad and unduly burdensome. Centurion further objects to Request No. 15 to the extent it seeks to invade the attorney-client privilege or work product of his counsel. Subject to and without waiving the foregoing objections, Centurion will produce sufficient documents to establish that certain investments covered by the allegations made in the Complaint are barred by the applicable statute of limitation.

**REQUEST NO. 17:** All documents identified by Centurion in Section B of its Initial Disclosures.

**RESPONSE:**      Responsive documents will be produced.

**REQUEST NO. 18:** All documents relating to the "Decadian Methodology" set forth on pages 1 and 2 of the Executive Summary.

**RESPONSE:**      Centurion objects to Request No. 18 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. The Decadian Methodology described in pages 1 and 2 of the Executive Summary is a methodology developed by Svejda over many years, which has been deployed to hundreds of individuals for many years through, primarily, newsletters that are sent to individuals capable of directly managing their own investments and without regard to the specifics of those individual's assets or investment objectives. Locating and producing all documents regarding the Decadian Methodology would be an

incalculable task. Further, the Decadian Methodology is not the subject of the claims raised by the CFTC.

**REQUEST NO. 19:**  All documents that support each claim made in the Executive Summary.

**RESPONSE:**      Centurion objects to Request No. 19 on the grounds that it is overbroad, unduly burdensome, and seeks documents that are not relevant or proportional to the needs of the case. The only allegation of fraud made by the CFTC in this action is that Svejda informed "pool participants" that Defendants would invest "pool participant funds" in exchange-traded futures contracts, and instead used "pool participant funds" to pay personal expenses of Svejda and corporate expenses of Centurion. The Executive Summary identified in Request No. 19 was part of the solicitation made to investors of Decadian and unequivocally refutes the CFTC's allegation, specifically stating that investor funds would be used for marketing, advertising, legal, and staffing. The CFTC's request for Centurion to produce all documents that support any other statement made in the Executive Summary goes well-beyond the allegations in the Complaint and clearly constitutes a fishing expedition which is overbroad, unduly burdensome, and not relevant or proportional to the needs of the case.

CENTURION CAPITAL MANAGEMENT, INC. and
TERRY MICHAEL SVEJDA, Defendants

By:    s/ Adam W. Barney
       Adam W. Barney #24521
          CLINE WILLIAMS
       WRIGHT JOHNSON & OLDFATHER, L.L.P.
       Sterling Ridge
       12910 Pierce Street, Suite 200
       Omaha, NE  68144
       Telephone:  (402) 397-1700
       Facsimile:  (402) 397-1806
       abarney@clinewilliams.com

## CERTIFICATE OF SERVICE

I, Adam W. Barney, hereby certify that on January 26, 2022, a copy of the foregoing document was emailed to counsel at the following email address(es):

Glen I. Chernigoff
U.S. CFTC
gchernigoff@cftc.gov

Aimee Latimer-Zayets
U.S. Commodity Futures Trading Commission
Alatimer-zayets@cftc.gov

       s/ Adam W. Barney