IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** <br><br> **Plaintiff,** <br><br> vs. <br><br> **TERRY MICHAEL SVEJDA, and CENTURION CAPITAL MANAGEMENT, INC.,** <br><br> **Defendants.** | **8:21CV311** <br><br> **ORDER** |

  This matter comes before the Court on the Motion to Compel Additional 30(b)(6) Testimony from Defendant Centurion Capital Management, Inc. (Filing No. 106) filed by Plaintiff, Commodity Futures Trading Commission ("CFTC"). The CFTC asserts Defendant, Centurion Capital Management, Inc. ("Centurion"), failed to produce an adequately prepared or knowledgeable witness to testify as to Topics 4, 5, and 6 set forth in the CFTC's notice of Rule 30(b)(6) deposition. The CFTC therefore asks that the Court compel Centurion to produce a knowledgeable witness to provide additional testimony on those topics.

## BACKGROUND

  The CFTC commenced this action against Centurion and its principal and sole director, Terry Michael Svejda ("Terry"), on August 16, 2021, alleging the defendants violated various provisions of the Commodity Exchange Act ("the Act"). (Filing No. 1). The CFTC alleges that beginning in approximately 2012, and continuing through the present, Centurion, by and through Terry, fraudulently solicited and received at least $790,050 from 27 individuals to invest in a commodity pool, Decadian, LLC ("Decadian"). The CFTC alleges the following facts in its Complaint.

  Terry operated a commodity advisory subscription service. As part of this service, Terry distributed newsletters to subscribers, many of which were farmers, that provided advice on agricultural commodities. In 2012, Terry formed Centurion and Decadian for the purpose of marketing a new commodity pool. Beginning in approximately August 2015, Terry, on behalf of Centurion, began marketing Decadian as a commodity pool. During telephone conversations and

emails with potential pool participants, some of whom were already subscribers to his newsletter, Terry stated that the pooled funds would be traded in agricultural commodity futures contracts on a recognized commodity exchange, such as the Chicago Mercantile Exchange.

Terry personally solicited pool participants on behalf of Centurion and was the only person who communicated with pool participants about pool operations. Terry controlled all of the bank accounts through which pool participant funds flowed, and he controlled the commodity trading accounts that received a small amount of pool funds. Decadian's Operating Agreement, which Terry provided to Decadian pool participants, stated that Decadian would be in the business of providing commodity advisory services. The Operating Agreement further stated Centurion would serve as the "Manager" of Decadian, with responsibility for managing Decadian's day to day business affairs.

Between 2012 and the present, the defendants received at least $790,050 from at least 27 pool participants. The pool participants submitted to Terry, either in-person or through the United States mail, checks made payable to Decadian; Terry then deposited the checks into a bank account held jointly in the names of Decadian and Terry, and controlled by Terry. Terry transferred approximately $784,650 in pool participant funds to a number of different bank accounts, including personal bank accounts held in his name and other business accounts for entities he controlled, as well as a personal futures trading account in his name. The defendants only returned approximately $5,400 of pool participant funds to pool participants. Terry used the $784,650 in pool funds to trade futures in his personal trading account, and to pay personal expenses and Centurion's corporate expenses, including payments to a website developer, and payments to a social media and online reputation management company. Decadian's Operating Agreement did not permit Terry to use pool participant funds for such purposes.

The CFTC alleges the defendants violated various provisions of the Act by: telling pool participants that Terry would use pool funds to trade exchange-traded commodity futures contracts, but instead misappropriating approximately 80% of pool participant funds; failing to register Centurion as a Commodity Pool Operator, and failing to register Terry as an Associated Person of Centurion; and by commingling pool participant funds, and failing to provide certain disclosure documents required under the Act. The CFTC requests injunctive relief, disgorgement of benefits the defendants obtained from the alleged violations, recission of contracts, restitution, civil monetary penalties, and costs. (Filing No. 1).

The defendants largely deny the CFTC's allegations. The defendants admit that Terry, through affiliated entities, provided a general subscription service related to commodities trading and distributed newsletters to subscribers related to commodities trading; that at all relevant times Terry controlled the operations of Centurion; and that the Decadian Operating Agreement stated that Centurion would serve as the "Manager" of Decadian. The defendants deny the CFTC's characterization of 27 individuals as "pool participants," and instead allege the 27 individuals made "capital investments" in Decadian. (Filing No. 16). Centurion was dissolved in April 2022. (Filing No. 109-3 at p. 15).

On April 3, 2023, the CFTC served a Rule 30(b)(6) deposition notice on Centurion. The parties were unable to schedule a meet and confer regarding the deposition topics in April due to defense counsel's limited schedule, and the defendants did not serve written objections to the notice. Centurion designated Decadian's bookkeeper to testify as to how the expenses of Decadian were tracked. Centurion designated Terry to testify as its primary corporate designee, "as he was the only person ever affiliated with Centurion." (Filing No. 113 at p. 1). On the afternoon of May 3, 2023, the day before Terry was scheduled to testify, defense counsel asked the CFTC to meet and confer to discuss the 30(b)(6) topics. (Filing No. 115-1 at p. 5). During the meet and confer, counsel for the CFTC provided examples of the types of documents that would be shown to Centurion's 30(b)(6) designee during the deposition. (Filing No. 109-1 at ¶¶ 3-5).

The CFTC's Rule 30(b)(6) deposition notice to Centurion set forth nine topics for examination:

    1. Formation, organization, and business goals of Centurion.

    2. Centurion's role and responsibilities with respect to the management of Decadian LLC ("Decadian").

    3. All aspects of the relationship, interaction, and division of responsibilities between Centurion and Defendant Terry Michael Svejda with respect to the management of Decadian LLC.

    4. Centurion's understanding of the purpose and scope of the Decadian LLC business.

    5. All circumstances relating to the solicitation of and communications with Decadian customers (as defined in the Complaint, see ECF No. 1).

> 6. Centurion's communications with other third parties relating to Decadian LLC.
>
> 7. All circumstances relating to the receipt of Decadian customer funds, including but not limited to: the identification and location of all Decadian bank accounts; the opening of each such account; the purpose of each such account; and the location of all deposits received from Decadian customers.
>
> 8. All circumstances relating to the disbursement of Decadian customer funds, including but not limited to: all transfers of Decadian customer funds from Decadian accounts to other accounts owned and/or controlled by Defendants; and all checks, wires, and other forms of payment originating from Decadian accounts.
>
> 9. Centurion's responses to all discovery requests propounded by the CFTC in this litigation.

(Filing No. 109-2).

Terry testified that to prepare for the Rule 30(b)(6) deposition, he reviewed the deposition notice, met with his attorney two times for a total of approximately four to five hours, and spent "between six and eight hours" reviewing documents over three days during the week the deposition was set to take place. Terry did not speak with anyone else besides his attorney to prepare for the deposition. (Filing No. 109-3 at pp. 6-7). The CFTC attempted to elicit Terry's testimony regarding the general categories of documents he reviewed to prepare for the deposition, specifically, whether he reviewed "any bank documents," "Decadian customer communications, including e-mails and texts," "any Centurion corporate documents," or "e-mail communications with other individuals who performed work for Decadian." Defense counsel objected to all questions as "attempt[s] to invade the attorney-client privilege and work product" privileges, and instructed Terry not to answer. (Filing No. 109-3 at pp. 8-9).

Terry's deposition as Centurion's corporate designee began on May 4, 2023; however, the parties suspended Terry's deposition after less than an hour due to his "apparent fatigue." The parties continued the deposition for 3.5 hours on May 11, and for 3.5 hours on May 12. (Filing No. 107 at p. 4). The CFTC contends Centurion inadequately prepared Terry to testify as its corporate designee regarding Topics 4, 5, and 6.

In Topic 4, the CFTC sought testimony regarding "Centurion's understanding of the purpose and scope of the Decadian LLC business." The CFTC therefore asked Terry questions regarding:

4

- Decadian business activities in January 2015;
- 2015 emails between Terry, Mark, Decadian employees, and third parties, relating to (1) Defendants' efforts to create LLCs that would operate as commodity pools and (2) discussions regarding the states in which individual LLCs would be based;
- The role of Centurion, Decadian, and other individuals and entities in those efforts;
- Documents that Mark and/or other Decadian counsel filed with governmental agencies in connection with the LLCs;
- Information related to Centurion and/or Decadian opting to discontinue efforts to establish and/or fund the LLCs; and
- Information related to Centurion and/or Decadian opting to limit the scope of the Decadian business to exclude investments in commodity pools

(Filing No. 107 at p. 5). The CFTC asserts Terry testified he did not recall communications or facts related to any of these subjects. By way of example, the CFTC points to the following exchanges:

> Q. Did there come a time when you decided to stop pursuing the LLCs as part of the Decadian business?
> MR. BARNEY: Form.
> A. Referring to the state LLCs, yes.
> 3 Q. And when was that?
> 4 A. I don't recall.

(Filing No. 109-3 at p. 23).

> Q. Okay. It [Exhibit 125] next says, The opportunity funds are our incubators that will bring us the $100 million fund through Robert Slonim. Do you see that?
> A. Yes, I do.
> Q. And so, does that mean that the opportunity funds would be folded into this $100 million fund, or would the opportunity funds be kept separate from the $100 million fund?
> MR. BARNEY: Form.
> A. Neither.
> Q. Okay. How would that work?
> A. As I -- best of my recollection, they were incubator funds. And I may have testified to this already, that they were again, conceptually proving our methodology to grow to a bigger level. And by proving that through the incubator funds, it allowed us access through the funding that Robert Slonim could provide.
> Q. And so what would happen to those incubator funds once you proved, quote, that the Decadian methodology worked?
> MR. BARNEY: Form.
> A. I could only speculate.
> Q. What was the plan for the incubator funds once you secured the Iowa -- or the $100 million Slonim fund?
> MR. BARNEY: Form. Foundation.

5

> A. I don't recall any discussions as to the plans for those funds. I'm sorry. I don't care – I don't recall any discussions concerning the continuation of the funds and how that would be continued or developed or done with at that time.

(Filing No. 109-3 at p. 38).

In Topic 5, the CFTC sought testimony regarding "All circumstances relating to the solicitation of and communications with Decadian customers" as defined in the Complaint. The CFTC asserts the contents of oral and written communications with Decadian customers are one of the key issues in this case. (Filing No. 107 at p. 5). In particular, the CFTC asked Terry about a document he created entitled the "Executive Summary," versions of which he provided to the 27 individuals referenced in the Complaint. The CFTC asserts Terry "did not recall key details of the Executive Summary, and had no recollection of the written communications." (Filing No. 107 at p. 6). For example, the CFTC asked Terry about an email he sent to an individual, "CS," with executive summaries attached, dated July 22, 2015:

> Q. And when it says, "I did leave in the opportunity funds because this event will occur, but it will now be funded from selling stock in Decadian," is that -- does that -- is that an accurate understanding of your understanding of the Decadian business at the time of this e-mail?
> MR. BARNEY: Form.
> A. No.
> Q. Okay. And so how is this not reflecting an accurate understanding of the Decadian business?
> MR. BARNEY: Form.
> A. Because I don't recall ever looking at selling stock to go into a fund. I don't know why that was printed that way, if that was just a misstatement on my part.
> Q. You believe that you made a mistake in the e-mail that you sent to [CS].
> MR. BARNEY: Form. Foundation.
> A. I do.
> . . .
> Q. And I can show you and will show you other documents that have discussed that these LLCs would be funded from selling stock in Decadian. Are you now saying it was a mistake to write that in all of the marketing documents that contain this language?
> MR. BARNEY: Form. Foundation.
> A. I don't recall this e-mail, and I'd be happy to look at other e-mails.
>
> . . .
>
> Q. Well, my question was earlier: Did you ever follow up with [CS] and tell him that the information in this document was incorrect?
> MR. BARNEY: Form.

6

> A. I don't recall which follow-up calls we had and -- or what documents that we reviewed together.
> Q. So your answer is you don't know?
> MR. BARNEY: Form.
> A. I don't remember.

(Filing No. 109-3 at pp. 34-36).

In another session of the deposition, the CFTC returned to Terry's testimony that his statement, "I did leave in the opportunity funds because this event will occur and now be funded from selling stock in Decadian," was a mistake:

> Q And yet it appears at the time that you changed this sentence when you were drafting this email to different customers. Can you explain that, please?
> A I don't recall why it was changed and as I had stated earlier, I don't recall this email.
> Q Do you know how many people received this particular email with this particular language from you?
> A No.
> Q Would it surprise you to hear that more than 60 people, in fact, it appears 62 people received an email containing this language from you?
> A No.
> . . .
> Q Did you ever inform any of these 62 people that the sentence, "I did leave in the opportunity funds because this event will occur and will now be funded from selling stock in Decadian," did you ever inform any of the 62 individuals that this sentence was a mistake?
> MR. BARNEY: Form. Foundation.
> 23 A I don't recall.

(Filing No. 109-8 at p. 7). Terry also acknowledged the same "mistake" in an email to customer "CH," but again stated, "I don't recall these emails." (*Id.* at p. 6).

In Topic 6, the CFTC sought testimony regarding Centurion's communications with other third parties relating to Decadian LLC. In particular, the CFTC asked Terry about Centurion's communications with two men identified in the Executive Summary as endorsing different aspects of the Decadian business, and each man's role in the Decadian business. The CFTC asserts Terry lacked recollection of numerous facts relating to the Executive Summary, including:

- Information related to a third-party $100 million investment fund, identified in Decadian marketing materials as being part of the Decadian business model

7

- Information related to a third-party marketing company that was named in Decadian solicitation materials, and with whom Terry exchanged multiple emails
- Emails and other documents related to a spreadsheet created by the third-party marketing company, which was modified and attached to Decadian solicitation materials, and which contained income projections for the LLC commodity pools

(Filing No. 107 at p. 7). The CFTC directs the Court to the following excerpts from Terry's deposition:

> Q. . . .If you could please turn to page Centurion 151 in the Oelke Exhibit.
> A Okay.
> Q If you look under line one memberships, there's a reference to Don and Scott Prewitt. Can you tell me who Don and Scott Prewitt are?
> MR. BARNEY: Form.
> A I recall the Prewitts being -- representing a company -- a marketing company in Florida.
> Q When did you meet them?
> MR. BARNEY: Form.
> A I do not recall.
> Q How did you meet them?
> MR. BARNEY: Are we going to take one t a time or are we going to go on both?
> Q Did you meet one before the other?
> A I don't recall who I met with and what time and who was there.
> . . .
> Q It says here that Don Prewitt from Orlando, Florida asked his son Scott, owner of Automated Entities to review Decadian. Is Automated Entities the marketing company that you're referencing?
> A I don't recall the name of their company. So we'll assume that it was Automated Entities that I met with.

(Filing No. 109-8 at p. 20).

> Q Did you tell Mr. Prewitt that you would be using his name in marketing materials sent to Decadian investors?
> A I don't recall the discussions that I had with Mr. Prewitt.
> Q And so do you recall whether you asked Mr. Prewitt whether you could use those numbers in his email in Decadian marketing materials provided to Decadian investors?
> A I don't recall the conversations I had with Mr. Prewitt, I'm sorry.

(Filing No. 109-8 at p. 21).

The CFTC also asked Terry about an email he sent from the Decadian email address dated May 5, 2015, to Allie Hoier and Jim Diprima:

> Q Okay. Under the first paragraph, the first line under the first paragraph says, "On the spreadsheet for membership income." Do you see that?
> A Yes.
> Q Do you recall asking Ms. Hoier or Mr. Diprima to create a spreadsheet for Decadian?
> A No, I do not.
> . . .
> Q Okay. If you could turn to the attachment behind this email. And unfortunately, this exhibit has only a black-and-white copy, but do you recognize this spreadsheet?
> A Only from documents we've reviewed.
> Q Do you know whether this is the spreadsheet that you asked Allie to draft as referenced in the previous exhibit?
> A No.

(Filing No. 109-8 at pp. 21-22). The CFTC attempted to refresh Terry's recollection on these topics by asking him to review other documents, including a document regarding "Decadian projections," dated July 2, 2015, which references "Three LLCs at $400,000" and "Bob Slonim's funding event at $100 million" and whether Terry remembered putting together the document containing that information:

> Q And so do you see that in the third green line you have Centurion, LLC and in the next column, the same yellow and green color coding that was in the Scott Prewitt attachment. Do you recall whether you used Scott Prewitt's spreadsheet as kind of a first draft for this document?
> MR. BARNEY: Form.
> A I don't recall if it was utilized or how it was utilized.
> . . .
> Q Does this refresh your recollection that you asked Allie Hoier and Jim Diprima to put together the spreadsheet containing this information?
> MR. BARNEY: Form.
> A It doesn't help me remember; I don't remember it. I don't remember the email at all. I really don't remember anything of it and why it would go to Allie and Jim, specifically.
> Q Do you recall that you included this income projection in solicitations to potential Decadian investors?
> MR. BARNEY: Form.
> A Are you referring to the Decadian projections?
> Q Yes.
> A I don't recall all that was sent out to what potential investors.
> Q Do you recall whether you told any Decadian investors that the three LLCs identified in Exhibit 289 were never funded?
> MR. BARNEY: Form. Foundation.
> A No, I do not recall.

9

> Q Do you recall whether you told any Decadian investors that line income number three, that Centurion LLC at $3 million was never funded?
> MR. BARNEY: Form. Foundation.
> A I don't recall the conversations with shareholders.
> Q Do you recall whether you told any of the individuals who invested in Decadian that the $100 million Bob Slonim funding event never happened?
> MR. BARNEY: Form. Foundation.
> A No, I do not recall any of the conversations with the investors.

(Filing No. 109-8 at pp. 22-24).

The CFTC has now filed the instant motion seeking a Court order compelling another Rule 30(b)(6) deposition of Centurion, asserting Centurion inadequately prepared Terry to testify as its corporate designee. Specifically, the CFTC contends Terry did "did not speak to a single Decadian employee" or to Mark Svejda ("Mark")[1] or Doug Hays ("Doug")[2] to prepare for his testimony, even though such individuals were involved in key decisions concerning the purpose and scope of Decadian's business as set forth in Topic 4; Terry did not review communications with Decadian customers or key solicitation documents that he sent to Decadian customers, even though these materials were relevant to Topic 5, and the CFTC has used these documents as exhibits to "nearly every witness deposed by the CFTC"; and Terry did not review Centurion's communications with third parties related to Decadian nor speak to any of these third parties to prepare for his testimony, even though that information was relevant to Topic 6. (Filing No. 107 at p. 4).

The CFTC asserts defense witnesses "have largely refused to answer questions related to this voluminous documentary evidence in support of the Complaint allegations." The CFTC asserts two key individuals who worked for Decadian, Terry and Doug, testified that they did not remember "most" of the documents shown to them, including documents authored by them, and both individuals "remembered little to nothing about oral and/or written communications with each other, or with Decadian customers." (Filing No. 107 at p. 3). Mark declined to answer similar questions during his deposition on the basis that his communications with Terry about the Decadian business, and all information he received and/or provided in connection with the Decadian business, were protected by attorney-client privilege. (*Id.*). The CFTC therefore

---

[1] Mark is an attorney and Terry's brother. Mark created Centurion Capital Management Inc. and authored the Operating Agreement of Decadian, LLC. (Filing No. 109-3 at pp. 10, 14, 16-17).

[2] Doug was a senior market analyst for Decadian. (Filing No. 109-6 at p. 4).

10

moves the Court to compel Centurion to produce a knowledgeable witness to provide additional testimony on topics 4, 5, and 6. (Filing No. 106).

The defendants respond Centurion made a good-faith endeavor to designate and prepare a person that could testify to matters known or reasonably available to Centurion. The defendants represent that Terry had a stroke in 2017, which impacts his short and long-term memory, particularly under stressful situations. (Filing No. 113 at pp. 1-2). The defendants contend that, unlike a typical Rule 30(b)(6) situation, Terry was the only individual ever associated with Centurion, and therefore his knowledge is, for all intents and purposes, the knowledge of Centurion. (Filing No. 113 at p. 3). The defendants assert the CFTC "principally takes issue with [Terry] not recalling the substance of oral conversations dating back seven to eight years," and "Centurion cannot magically grant someone the ability to remember an oral conversation." (Filing No. 113 at p. 5). The defendants represent Terry was prepared to testify, and did testify, what he knew from corporate documents, and there were no former employees of Centurion from whom additional information could be solicited. (Filing No. 113 at p. 4).

The defendants further assert "there is no evidence that [Terry] did not review the documents referenced by the CFTC in preparation for the deposition," and instead Terry testified he could not recall certain documents or communications. (Filing No. 113 at p. 7). The defendants simultaneously maintain that the CFTC's questions about what types of documents Terry reviewed "were properly objected to" on the basis of attorney client and work product privilege, and "the CFTC has not moved to compel answers to those questions." (Filing No. 113 at pp. 7-8). The defendants therefore assert the CFTC "did not make a record of [Terry]'s preparation and review of documents." (Filing No. 113 at p. 9).

## ANALYSIS

### A.  Standards for Rule 30(b)(6) Deposition Preparedness

Federal Rule of Civil Procedure 30(b)(6) provides that, in response to a notice or subpoena, an organization must designate one or more persons who consent to testify on its behalf. "The persons designated must testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). "The testimony of a Rule 30(b)(6) witness represents the collective knowledge of the corporation, not of the specific individual deponents."

11

*Waste Connections, Inc. v. Appleton Elec., LLC*, No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014) (quoting *QBE Ins. Corp. v. Jorda Enter., Inc.*, 277 F.R.D. 676, 688 (S.D. Fla. 2012)). "The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved." *Id.* "This obligation requires the designee to testify about information known or reasonably available to the organization" and it "can include information held by third-party sources if that information is reasonably available to the organization." *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *3 (E.D. Mo. Dec. 4, 2020) (quoting *List v. Carwell*, 2020 WL 5988514, at *13 (D Minn. Oct. 9, 2020). "If no current employee has sufficient knowledge to provide the requested information, the party is obligated to prepare one or more witnesses so that they may give complete, knowledgeable and binding answers on behalf of the corporation." (citation, internal quotation marks, and alteration omitted)). "If need be, the responding party 'must prepare deponents by having them review prior fact witness deposition testimony as well as documents and deposition exhibits," as "[a]ny other interpretation of the Rule would allow the responding corporation to 'sandbag' the depositional process 'by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.'" *Prokosch v. Catalina Lighting, Inc.*, 193 F.R.D. 633, 638-39 (D. Minn. 2000) (citation omitted). "[T]he burden upon the responding party, to prepare a knowledgeable Rule 30(b)(6) witness, may be an onerous one, but we are not aware of any less onerous means of assuring that the position of a corporation, that is involved in litigation, can be fully and fairly explored." *Id.* "Proper preparedness for a Rule 30(b)(6) deposition requires the good faith of both parties." *CMI Roadbuilding, Inc. v. Iowa Parts, Inc.*, 322 F.R.D. 350, 361 (N.D. Iowa 2017).

A Rule 30(b)(6) deposition serves a unique function—it is the "sworn corporate admission that is binding on the corporation." See *In re Vitamins Antitrust Litigation*, 216 F.R.D. 168, 174 (D. D.C. 2003); see also *Sprint Communications Co., L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) ("In a Rule 30(b)(6) deposition, there is no distinction between the corporate representative and the corporation. The Rule 30(b)(6) designee does not give his personal opinion. Rather, he presents the corporation's position on the topic. The designee testifies on behalf of the corporation and thus holds it accountable.") (internal quotation marks and citations omitted). A corporation must make "a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to

prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." *Dravo Corp. v. Liberty Mut. Ins. Co.*, 164 F.R.D. 70, 75 (D. Neb. 1995) (citations omitted). However, "depositions under 30(b)(6) are not meant to be traps in which the lack of an encyclopedic memory commits an organization to a disadvantageous position[.]" *Brown v. W. Corp.*, No. 8:11CV284, 2014 WL 1794870, at *1 (D. Neb. May 6, 2014).

"If the designated witness 'is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all.'" *Wood v. PACCAR, Inc.*, No. 19-CV-1010-LRR, 2020 WL 831142, at *9 (N.D. Iowa Feb. 19, 2020) (quoting *Resolution Tr. Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 197 (5th Cir. 1993)). Failing to provide a knowledgeable witness in response to a Rule 30(b)(6) notice is sanctionable under Rule 37(b)(2). *CitiMortgage, Inc. v. Chicago Bancorp, Inc.*, No. 4:12-CV-00246 CDP, 2013 WL 3946116, at *2 (E.D. Mo. July 31, 2013) (citing *Cedar Hill Hardware & Constr. Supply, Inc. v. Ins. Corp. of Hannover*, 563 F.3d 329, 345 (8th Cir. 2009)). "Alternatively, an ineffective Rule 30(b)(6) deposition may be remedied by a second deposition of the corporation." See *Oliver v. Greenwell*, No. 1:19 CV 137 ACL, 2022 WL 16833979, at *2 (E.D. Mo. Nov. 9, 2022).

B. Discussion

The CFTC argues Centurion produced an unprepared witness that failed to give proper testimony on Topics 4, 5, and 6 of the Rule 30(b)(6) deposition notice. (Filing No. 106). The CFTC contends that if Centurion is unable to produce a witness with knowledge, then it should be precluded from offering any affirmative evidence on those issues at trial. (Filing No. 107 at p. 12, fn. 23).

Terry testified that to prepare for the Rule 30(b)(6) deposition, he reviewed the deposition notice, met with his attorney two times for a total of approximately four to five hours, and spent "between six and eight hours" reviewing documents over three days during the week the deposition was set to take place. Terry did not speak with anyone else besides his attorney to prepare for the deposition. (Filing No. 109-3 at pp. 6-7). The CFTC attempted to elicit Terry's testimony regarding the categories of documents he reviewed to prepare for the deposition, but

13

his attorney instructed him not to answer on the basis of attorney client and work product privileges.

The defendants cite *Arconic Inc. v. Universal Alloy Corp.*, 2018 WL 4839225, at *6 (N.D. Ga. July 31, 2018) for the proposition that "Rule 30(b)(6) cannot be used to violate the attorney work product privilege by requiring the witness to identify which documents . . . have been determined by counsel to be the most probative in the case." However, the defendants have omitted an important modifying phrase from that quotation: "Rule 30(b)(6) cannot be used to violate the attorney work product privilege by requiring the witness to identify which documents among over one million *produced by the opposing party in discovery* have been determined by counsel to be the most probative in the case." The court continued, "Otherwise, in a document intensive case like this one, a party could dump a voluminous number of documents on the other side and insist that opposing counsel locate the proverbial needle in the haystack and provide a 30(b)(6) witness to disclose the work product of opposing counsel's review." *Id.* (citing *United States v. Frederick*, 182 F.3d 496, 500 (7th Cir. 1999)). The dispute in *Arconic* arose because the defendant "want[ed] to know what [the plaintiff's] lawyers th[ought] of [the defendant's] documents" in a trade secret misappropriation case through a Rule 30(b)(6) deposition of the plaintiff. *Id.* at *4. The court noted the issue before the court did not "involve requiring a deponent to prepare and testify about facts in the entity's own possession," but instead was "whether the 30(b)(6) deponent had an obligation to supplement his knowledge of relevant information known to [the plaintiff] by reviewing documents produced by [the defendant] in discovery[.]" *Id.* at *6 fn. 7. The court concluded that, because the defendant sought testimony from the plaintiff's Rule 30(b)(6) deponent regarding defendant's documents, rather than the plaintiff, the work product privilege was implicated.

But in an ordinary case, "[A] question about what documents a deponent reviewed will not implicate the work product doctrine." *Correia v. Jones*, No. 6:17-CV-06082, 2018 WL 10467959, at *2 (W.D. Ark. June 27, 2018) (rejecting assertion that "attorney-client privilege or the work product doctrine somehow extends to protect the identity of any document he reviewed before the deposition merely because he did so in the presence of counsel or else discussed those documents with counsel" because "[w]ere the privileges read that expansively, they would render nearly all discovery meaningless."); see also *State Farm Mut. Auto. Ins. Co. v. New Horizont, Inc.*, 250 F.R.D. 203, 215 (E.D. Pa. 2008) ("Contrary to State Farm's contention, the

14

mere fact that counsel for State Farm may have provided such information to the witness in preparation for the Rule 30(b)(6) deposition does not convert the information into attorney work product."); *Oliver v. Greenwell*, No. 1:19 CV 137 ACL, 2023 WL 1778158, at *3 (E.D. Mo. Feb. 6, 2023) (quoting *In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007, 1018 (1st Cir. 1988)) ("[T[he mere selection and grouping of information by counsel for a deponent to review does not automatically transform otherwise discoverable documents into work product.").

Here, the CFTC's Rule 30(b)(6) deposition notice informed Centurion it was seeking testimony regarding its formation, organization, and business goals; Centurion's management of Decadian; the relationship between Centurion and Terry in the management in Decadian; the solicitation of and communications with Decadian customers; Centurion's communications with other third parties regarding Decadian; and information relating to Decadian's receipt and disbursement of customer funds. Centurion designated Terry as its Rule 30(b)(6) witness to testify as to these topics. The CFTC therefore asked Terry what he did to prepare for the deposition, including whether he reviewed general categories of documents related to these deposition topics, including "any bank documents," "Decadian customer communications, including e-mails and texts," "any Centurion corporate documents," or "e-mail communications with other individuals who performed work for Decadian." Unlike the circumstances in *Arconic*, these are the defendants' *own* documents. Asking a Rule 30(b)(6) deponent whether he reviewed general categories of his own organization's documents to prepare for a deposition does not implicate the work product or attorney client privilege. Therefore, defense counsel's work-product and attorney-client privilege objections to the CFTC's questions were improper.

Nevertheless, the Court still finds that, on the record before it, compelling a second deposition of Centurion is not warranted. Most of the CFTC's complaints regarding the deposition deal with Terry's lack of memory as to whether he had conversations with individuals, what he told individuals in those conversations, and his mental impressions at the time he himself drafted emails or made communications on behalf of Decadian or Centurion. The Court does generally agree with the defendants that, unlike a typical Rule 30(b)(6) situation, Terry was the only individual ever associated with Centurion, and therefore his knowledge is, for all intents and purposes, the knowledge of Centurion. (Filing No. 113 at p. 3). So, although the Court finds defense counsel improperly objected to the CFTC's attempts to elicit Terry's testimony regarding what categories of documents he reviewed to prepare for his deposition, it is

15

not clear to the Court what documents Terry could have reviewed to refresh his recollection as to those matters. The issues with the deposition appear to have occurred not because Centurion abdicated its duty to prepare its deposition designee, but instead because that information is not known or reasonably available to the organization. For that reason, it is not clear to the Court how Centurion could prepare another deposition witness to answer the questions the CFTC seeks. See *Whatley v. Canadian Pac. Ry. Ltd.*, No. 1:16-CV-74, 2022 WL 14145351, at *3 (D.N.D. June 28, 2022) (quoting *Bank of New York v. Meridien BIAO Bank Tanzania Ltd.*, 171 F.R.D. 135 (S.D.N.Y. 1997)) ("In order for the Court to impose sanctions, the inadequacies in a deponent's testimony must be egregious and not merely lacking in desired specificity in discrete areas.").

Centurion takes the position that despite its good-faith effort to prepare for its deposition, it cannot "magically grant someone the ability to remember," and "no one and nothing can force [Terry] to remember his prior mental impressions at the time a document or written communication was made." (Filing No. 113 at p. 5). The Court accepts Centurion's representations it prepared its deponent in good faith, and that no amount of preparation will prepare any witness to recall the matters inquired into by the CFTC. The Court also accepts Centurion's position that "nothing" will grant Terry the ability to remember the answers he could not recall. Given Centurion's representations, Centurion will not be permitted to "effectively change" its answers to those questions at trial, and the Court therefore will prohibit the defendants from 1) calling a witness to testify as to any matters Terry could not recall or did not know regarding Topics 4, 5, or 6, and 2) permitting Terry to testify as to any topics he could not recall or did not know as to Topics 4, 5, and 6. The defendants' records, communications, and emails relevant to Topics 4, 5, and 6 thus will largely speak for themselves, since Centurion could not produce a witness to competently testify about their contents. See, e.g., *Prokosch*, 193 F.R.D. at 639 (stating the purpose of Rule 30(b)(6)'s duty to prepare a witness is designed to prevent the prevent the "sandbagging" of an opponent "by conducting a half-hearted inquiry before the deposition but a thorough and vigorous one before the trial.") (quoting *United States v. Taylor*, 166 F.R.D. 356, 362 (M.D. N.C. 1996)); see also *Function Media, L.L.C. v. Google, Inc.*, No. 2:07-CV-279-CE, 2010 WL 276093, at *1 (E.D. Tex. Jan. 15, 2010) ("If the designee testifies that [the organization] does not know the answer to [deposing attorney]'s questions, [the

16

organization] will not be allowed to effectively change its answer by introducing evidence during trial. The very purpose of discovery is to avoid trial by ambush."). Accordingly,

**IT IS ORDERED:** Plaintiff's Motion to Compel Additional 30(b)(6) Testimony from Defendant Centurion Capital Management, Inc. ([Filing No. 106](#)) is denied.

Dated this 6th day of November, 2023.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge