IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

COMMODITY FUTURES TRADING
COMMISSION,

        Plaintiff,

vs.

CENTURION CAPITAL
MANAGEMENT, INC., and TERRY
MICHAEL SVEJDA,

        Defendants.

8:21-CV-311

MEMORANDUM AND ORDER

This matter is before the Court on the parties' motions in limine (filing 151, filing 154, filing 155, filing 156, filing 157, filing 158, filing 195), and on other pretrial motions and issues, including a proposed revision to the Final Pretrial Conference Order (filing 150) and the Court's determination on how video depositions will be utilized during the trial.

PLAINTIFF'S #1 AND DEFENDANTS' #3: UNTIMELY DISCLOSED WITNESSES

The plaintiff's motion to exclude Wayne Rasmussen is unopposed and granted. The plaintiff asserts that one of the defendants' proposed witnesses, Doug Hays, was not timely disclosed and should be excluded. And the defendants' assert that three of the plaintiff's proposed witnesses—Amy Meyer, Tanya Deininger, and Kathleen Clapper—were untimely disclosed and should not be permitted to testify.

Parties must disclose individuals "that the disclosing party may use to support its claims or defenses, unless the use would solely be for impeachment." Rule 26(a)(1)(A)(i). This disclosure must be supplemented "in a

timely manner" if a party learns that the disclosure is incomplete or incorrect, i.e., if the party finds additional witnesses that it would like to call to testify at trial. *See* Rule 26(e). Pursuant to Fed. R. Civ. P. 37, if a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The Court "may exclude the information or testimony as a self-executing sanction unless the party's failure to comply is substantially justified or harmless." *Wegener v. Johnson*, 527 F.3d 687, 692 (8th Cir. 2008); Rule 37(e). But the Court has "wide discretion to fashion a remedy or sanction as appropriate for the particular circumstances of the case." *Id*. Exclusion is a "harsh penalty" which "should be used sparingly." *Id*. Rather than exclusion, a remedy courts can employ is continuing a trial. *See id*.

The Court has considered whether the untimely disclosures were substantially justified or harmless, the reason for noncompliance, the surprise and prejudice to the opposing party, the extent to which allowing the witnesses to testify would disrupt the order and efficiency of the trial, and the importance of the information or testimony. *Id*.

The plaintiff deposed Doug Hays, and he is referenced on several exhibits the plaintiff seeks to introduce. The defendants intend to ask Hays about those exhibits and his intention behind them. This is permissible and the plaintiff has not identified how it would be prejudiced. While the plaintiff argues that Hays didn't remember certain information in his deposition, that is a proper impeachment topic. The defendants' failure to disclose Hays as a witness is substantially justified and harmless.

And, while the circumstances are more complicated, the plaintiff's disclosure of the contested witnesses is also substantially justified and harmless. The plaintiff argues that the witnesses aren't even untimely, and

that argument has merit. The witnesses contested by the defendants were disclosed following a Rule 30(b)(6) deposition, taken in May 2023, in which the defendant Terry Svejda testified, on behalf of defendant Centurion Capital Management. Svejda could not remember certain information, and he indicated his accountants would know that information. The plaintiff moved to compel additional testimony from Centurion under Rule 30(b)(6) (filing 106), but the motion was denied because it was not clear what Svejda could do to remember things that he testified he did not remember. *See* filing 149 at 16. The Court accepted "Centurion's representations [that] it prepared its deponent in good faith, and that no amount of preparation will prepare any witness to recall the matters inquired into by" the plaintiff. *Id.*

But the plaintiff, understandably, sought answers to its questions. The plaintiff identified employees of the defendants' accounting firm that could testify to the matters forgotten by Svejda, and it supplemented its Rule 26 disclosure in September 2023. This disclosure, while well-after the close of discovery on May 16, 2023 (filing 95), is substantially justified and harmless, because the plaintiff merely seeks to introduce evidence of questions which are firmly within the defendants' control. It is the defendants' own record-keeping and business practices which created the need for additional witnesses, and so the defendants cannot claim harm.

For reasons unrelated to the parties' untimely disclosure problems, this trial was continued. Both parties had the opportunity, during the several months between the trial's continuance to today, to address these evidentiary issues and cure any prejudice. The harsh penalty of exclusion is not appropriate under these circumstances. The motions to exclude untimely disclosed witnesses will be denied.

*However,* both parties have indicated that they will limit testimony to, in the plaintiff's case, questions asked in the Rule 30(b)(6) deposition, and, in the defendant's case, questions surrounding certain exhibits on which Hays is named. The Court will *strictly* hold the parties to those limitations.

### PLAINTIFF'S #2: EVIDENCE OF DECADIAN WEALTH FUND

The plaintiff seeks to exclude evidence of the "Decadian Wealth Fund," established by the defendants. This matter was addressed in the Court's order on summary judgment, filing 177 at 13. The creation of the Decadian Wealth Fund speaks to Svedja's motive, knowledge, and intent to trade investor funds as a commodity pool, and evidence related to the Decadian Wealth Fund is admissible for that purpose.

The plaintiff insists that Svedja's assertion that the Decadian Wealth Fund was related to Decadian is inconsistent with other evidence, but that is an issue the jury gets to decide. The Court could not resolve credibility determinations on summary judgment, nor can it do so by a motion in limine. This is a question for the jury.

### PLAINTIFF'S #3: DEBRA GATZEMEYER EXPERT OPINIONS

The plaintiff asserts that Centurion's bookkeeper, Debra Gatzemeyer, will testify about "general principles of bookkeeping" in a way which implicates Fed. R. Evid. 702, and the defendants did not designate the bookkeeper as an expert. According to the plaintiff, "principles of bookkeeping" are specialized or technical knowledge under Rule 702. *See* filing 156-1 at 4.

It's clear Gatzemeyer is no expert, and the parties don't dispute that. But a "lay witness' testimony in the form of opinions or inferences need only be rationally based on perception and helpful to a determination of a fact in issue." *Burlington N. R. Co. v. State of Neb.*, 802 F.2d 994, 1004 (8th Cir. 1986). As a

lay witness, Gatzemeyer may, after foundation is laid as to her personal knowledge, perception, and industry experience, may give lay opinion testimony about bookkeeping practices. *See id.* The witness is permitted to testify about what she did and why she believed what she was doing was proper.

Naturally, the plaintiff is welcome to challenge Gatzemeyer's credentials, knowledge, and bookkeeping practices on cross-examination. But the motion to exclude such testimony is denied, without prejudice to assert any appropriate foundational objection at trial.

### PLAINTIFF'S #4: "PRE-LITIGATION INVESTIGATION"

The plaintiff seeks to exclude evidence or argument from the defendants that the plaintiff's pre-litigation investigation was "incomplete, inadequate, and/or improper," because such evidence is irrelevant and likely to confuse the jury. *See* filing 157-1 at 2. The Court agrees.

The defendants assert that the plaintiff's credibility is an issue at trial. It's not. Perhaps the credibility of *individual CFTC investigators* is at issue, and the defendants are welcome to question *individual witnesses* about improperly jumping to conclusions or inadequate investigations. And, the defendants may question witnesses about interactions with the plaintiff prior to their testimony to expose any potential bias. But general references to the plaintiff's allegedly inadequate investigation will lead down an unnecessary rabbit hole. It is prudent to exclude questions about the investigation for danger of confusing the issues and delaying the trial, unless such inquiry is targeted to attacking the credibility of a *particular witness.*

5

PLAINTIFF'S #5: "WITNESS INTERVIEW MEMORANDA"

The plaintiff seeks to exclude different memoranda drafted by an investigator for the CFTC as hearsay. The defendants assert that the plaintiff has designated deposition testimony in which the witnesses reference and even directly quote the memoranda. Without the fully-developed record at trial, there is no way for the Court to rule on this issue. The memoranda may be necessary to establish the context of the designated statements, or they may not. The motion in limine will be denied without prejudice to reassertion. It will be the defendants' burden at trial to demonstrate the relevance and admissibility of the documents.

PLAINTIFF'S #6: CLINT SONDERMAN VIDEO DEPOSITION

The parties took Clint Sonderman's deposition. Sonderman is within the subpoena power of the Court. The plaintiff asserts now that Sonderman is unavailable under Fed. R. Civ. P. 32(a)(4) and intends to call him by deposition. *See* filing 196 at 3. The defendants assert that Sonderman is available, and if the plaintiff wants him to testify at trial, it should be required to call him live.

Based on argument heard in open court on March 22, 2024, it appears the defendants are concerned that Sonderman's credibility will not be fully impeached because the plaintiff intends to play its designated deposition testimony via video, while the defendants will have to read their designated deposition testimony into the record. For reasons explained below, under Fed. R. Civ. P. 32(a)(6), this will not be allowed, and the plaintiff must include in its video all of the defendants' counter-designations.

The Court is optimistic that this requirement will resolve the parties' dispute regarding this witness. However, if it does not, the Court will take it up at the appropriate time. The plaintiff's motion in limine seeking to establish

the admissibility of Sonderman's deposition is provisionally granted, subject to objection at trial[1]

### DEFENDANTS' #1: ACTS OR EVENTS BEFORE JANUARY 1, 2016

The defendant argues that the five-year statute of limitations in 28 U.S.C. § 2462 means that the plaintiff cannot introduce any evidence of acts or occurrences prior to January 1, 2016. Filing 152 at 2. But acts occurring prior to a statute of limitations may be relevant and admissible to show motive, intent, and knowledge for events alleged to have occurred within the statute of limitation. The defendant also argues that the statute of limitations precludes restitution and damages for acts outside of the statute of limitations. Any question of damages will be determined after the trial. *See* filing 150 at 9 ("The parties agree that the jury in this matter will determine liability only. The Court will determine remedies, if necessary.") The defendants' motion will be denied in this respect.

### DEFENDANTS' #2: UNPLEADED FRAUD ALLEGATIONS

The defendants seek to preclude the plaintiff from introducing evidence beyond the two specific allegations of fraud found in the complaint:

a. misappropriating pool participant funds to trade futures in Svejda's personal trading account, and to pay personal expenses of Svejda and corporate expenses of Centurion; and,

---

[1] Absent a motion to quash pursuant to Fed. R. Civ. P. 45(d), it's difficult for this Court to assess the alleged burden on Sonderman or the likelihood of his nonappearance. But there is authority suggesting a witness refusing a subpoena may be "unavailable" pursuant to Fed. R. Evid. 804(a)(2) (declarant is unavailable if he "refuses to testify about the subject matter despite a court order to do so.") *United States v. Rasmussen*, 790 F.2d 55, 56 (8th Cir. 1986).

  b. misrepresenting to pool participants and prospective pool participants that Defendants would invest pool participant funds in exchange-traded futures contracts, and instead using pool participant funds to pay personal expenses of Svejda and corporate expenses of Centurion.

Filing 1 at 13; *see* filing 152 at 13. The Court agrees with the defendants regarding the scope of the complaint, but will deny the blanket motion in limine in favor of timely and appropriate objections at trial.

  The relevant authority relied upon by the plaintiff is the Eighth Circuit's decision in *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 645 (8th Cir. 1995). In that case, a property investor sued a hotel chain for alleged fraud relating to misstatements made by a vice-president of the hotel chain concerning the sale of a hotel franchise to the investor. *Id*. at 641. In its complaint, the investor alleged 13 separate paragraphs describing alleged misstatements made by the vice-president, and alleging their falsity. *Id*. at 645-46. But at trial, evidence of other misrepresentations was offered, and on appeal the hotel chain argued that the trial court had erred in allowing evidence of those other unpled allegations. *Id*. at 645.

  The Eighth Circuit rejected that argument, for two reasons. *Id*. First, the Court of Appeals noted that the vice-president, although he died before trial, had answered questions regarding all of the statements at issue in his deposition, meaning that the hotel chain had an opportunity to "explore [his] position on these issues." *Id*. Second, the Court of Appeals found that "although perhaps lacking in some specifics that were later developed at trial, [the investor]'s complaint stated with sufficient particularity the fraudulent misrepresentations and omissions that formed the basis of [its] common-law fraud claim." *Id*. The detailed allegations in the complaint, the Court

explained, "unambiguously stated the core of [the investor]'s claims against [the hotel chain] and the factual grounds upon which its claims were based. The allegations in [the investor]'s complaint, far from being conclusory, stated with particularity the various misrepresentations and omissions by [the hotel chain] that [the investor] alleged constituted fraud." *Id*. at 646.

The plaintiff insists the same is true here. Filing 168 at 15-16. The Court is not convinced. In *Quality Inns*, the gravamen of the investor's claims was that the hotel chain vice-president had overstated his own expertise and the value of the franchise being sold. *See id*. at 646. The additional misrepresentations adduced at trial hadn't been specifically pled, but still struck the same notes—they were additional examples of the vice-president overstating his expertise and the value of the franchise. *See id*. at 645.

In this case, however, the core of the plaintiff's claims is that Svejda promised to invest pool participant funds in a particular way, but actually used them for something else. *See* filing 1 at 13. A claim that he also misrepresented the profitability of such a venture is fundamentally different.

That said, the *evidence* for such claims is harder to parse. To take a simple example, an hypothetical statement such as "I'll invest your money in a commodity pool for a 200 percent return on investment" would be relevant and admissible to the claim alleged in the plaintiff's complaint. But beyond that, evidence of falsified profit estimates *might* be admissible because it would support an inference that the defendants didn't intend to use the investors' funds for an *actual* investment—evidence that the *features* of the investment vehicle were imaginary might suggest that the *entire* investment vehicle was imaginary, which is the claim the plaintiff pled. But, for instance, extrinsic evidence regarding the potential profitability of the allegedly imaginary investment pools has diminishing relevance on that point, and may well start

9

to run into the Court's obligation under Fed. R. Evid. 403 to limit the adduction of evidence that confuses the issues, misleads the jury, or just wastes time.

All of that is to say that while the Court fundamentally sees the defendants' point, the evidentiary questions are too specific and fact-intensive for a blanket ruling via motion in limine. The motion will be denied, subject to objections at trial considering the discussion above.

### DEFENDANTS' #4: RESCISSION EVIDENCE

The defendants seek to exclude evidence or testimony involving rescission as a potential remedy. The defendants, in particular, object to certain deposition testimony. Because any damages are for the Court to determine after the jury trial, the jury should not hear any mention of rescission. Whether the plaintiff waived its rescission remedy may be discussed at the appropriate time. The motion will be granted in this respect.

### DEFENDANTS' #5: PHONE CONVERSATIONS

The Court will defer ruling on this motion until it can listen to the recordings. Counsel should advise the Court when the recordings are expected to be introduced so that the Court can review the exhibits and determine whether, and for what purposes, the evidence is admissible. The parties are reminded that Fed. R. Evid. 608 prohibits collateral evidence for prior dishonest acts, so the phone calls cannot be introduced to substantiate any alleged prior dishonest acts.

### PROPOSED REVISED PRETRIAL CONFERENCE ORDER

The plaintiff's motion—that is, emailed request—to revise the pretrial conference order will be denied. It is well-established that the pretrial order supersedes all previous pleadings and controls the subsequent course of action

unless modified by a subsequent order, and that it will be modified only to prevent manifest injustice, and only if there is no substantial injury or prejudice to the opponent. *United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 499 (8th Cir. 2004); *see Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1335 (8th Cir. 1985).

The plaintiff has had the opportunity to argue this at a pretrial hearing, and brief the matter, and have identified no manifest injustice apparent to the Court.[2] And the defendants are certainly prejudiced, both substantively and procedurally, by the plaintiff's attempt to modify the pretrial order, just a few days before trial, simply by emailing a proposed amended order to the Court. The defendants were entitled to rely on the pretrial order in preparing for trial. The pretrial order is a court *order*, and it's been on file since November 10. Filing 150. While this case is complex, the uncontroverted facts agreed to by the parties in the pretrial order were only 15 numbered paragraphs, spanning a little over 2 pages. Filing 150 at 2-4. It's not asking too much of the plaintiff to have read them and raised this issue sometime before March.

Moreover, the effect of amending an undisputed fact in the pretrial order is to permit the plaintiff to withdraw from a stipulation. But valid stipulations regarding questions of fact are controlling and conclusive, and courts must enforce them. *Gander v. Livoti*, 250 F.3d 606, 609 (8th Cir. 2001); *see Christian Legal Soc. Chapter of the Univ. of California, Hastings Coll. of the L. v. Martinez*, 561 U.S. 661, 677-78 (2010). True, there may be "exceptional circumstances" under which relief may be granted from a stipulation. *See Fenix v. Finch*, 436 F.2d 831, 837 (8th Cir. 1971); *Osborne v. United States*, 351 F.2d 111, 120 (8th Cir. 1965). But nothing exceptional happened here—nor did the

---

[2] At the March 25, 2024 pretrial hearing, the Court offered the parties the opportunity to file supplemental briefs on this issue by the end of the day yesterday. No briefs were filed.

11

plaintiff give timely notice. *See Carnegie Steel Co v. Cambria Iron Co*, 185 U.S. 403, 444 (1902).

The plaintiff is particularly not prejudiced by not amending the exhibit list to remove exhibits it no longer intends to offer. Again, the defendants were entitled to rely on it. The plaintiff may think it's helpful, but the defendants are entitled to disagree—and the plaintiff is, as the defendants point out, entirely capable of simply not offering exhibits it doesn't want to offer. That happens all the time during trial, and it's not a big deal.[3]

### VIDEO DEPOSITIONS

Based on statements from counsel in open court on March 25, 2024, the Court is under the impression that the plaintiff's video deposition designations will be played to the jury by video, while the defendants' counter-designations will be read into the record. But under Fed. R. Civ. P. 32(a)(6), the defendants may "require the offeror to introduce other parts that in fairness should be considered with the part introduced." So, the plaintiff must compile its designations and the defendants' counter-designations in the videos presented as part of the plaintiff's case-in-chief.

For deposition testimony which the defendants seek to introduce as part of their case-in-chief, the defendants may not utilize the video depositions—but, too, must read the plaintiff's counter-designations into the record along with their designations. (If the plaintiff is unsatisfied with having its counter-designations read by the defendants, then there's an obvious solution to that problem, *see* Rule 32(c), but that's up to the plaintiff).

---

[3] The plaintiff also mentioned *adding* 4 exhibits, and it's not clear to the Court what the defendants' position is on that. The parties should be prepared to take that up on Monday morning if the issue is controverted.

12

IT IS ORDERED:

1. The defendants' motion in limine (filing 151) is granted in part and denied in part, as set forth above.

2. The plaintiff's motion in limine #1 (filing 154) is denied.

3. The plaintiff's motion in limine #2 (filing 155) is denied.

4. The plaintiff's motion in limine #3 (filing 156) is denied without prejudice.

5. The plaintiff's motion in limine #4 (filing 157) is granted.

6. The plaintiff's motion in limine #5 (filing 158) is denied without prejudice.

7. The plaintiff's motion in limine #6 (filing 195) is granted.

Dated this 28th day of March, 2024.

BY THE COURT:

*/s/ John M. Gerrard*
John M. Gerrard
Senior United States District Judge